**In re Leola M. ARNOLD, Debtor.**

**No. 83–01310A.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

June 13, 1984.

David W. Cranshaw, Hurt, Richardson, Garner, Todd & Cadenhead, Atlanta, Ga., for James E. Hickey, Jr.

Robert L. Simmons, Atlanta, Ga., for debtor.

## ORDER

W. HOMER DRAKE, Bankruptcy Judge.

This case is before the Court on the motion filed by James E. Hickey, Jr. ("Hickey") for reconsideration of the Court's August 25, 1983 Order confirming the above-named debtor's Chapter 13 plan. Following a hearing on Hickey's motion, this matter was taken under advisement.

The history of this case is as follows: On March 18, 1983, the debtor filed her Chapter 13 petition. Her original Chapter 13 plan filed on March 22, 1983 proposed to pay unsecured creditors 100 cents on the dollar. The debtor's employer was ordered to deduct $207.00 per month and remit the same to the Chapter 13 trustee. However, objections to confirmation of the debtor's Chapter 13 plan were filed by the Chapter 13 trustee and Hickey. The objection by the Chapter 13 trustee was that the debtor's plan would not be completed within five years as required by Bankruptcy Code § 1322(c). Hickey's objection raised the same argument and alleged, further, that the plan proposed to modify Hickey's rights as a holder of a claim secured only by a security interest in real property which is the debtor's principal residence and that the value, as of the effective date of the plan, of property to be distributed on account of Hickey's claim is less than the allowed amount of his claim.

A confirmation hearing was held on August 25, 1983 during which the debtor offered to satisfy the Chapter 13 trustee's objection by increasing her monthly payments to the Chapter 13 trustee to $250.00. Thereafter, on September 1, the Chapter 13 trustee withdrew his objection to confirmation. By Order of the Court dated August 25, 1983, the debtor's Chapter 13 plan was confirmed over Hickey's objections.

Hickey filed his motion for reconsideration with an accompanying brief on September 6, 1983, and the debtor filed a brief in opposition on September 19, 1983. The debtor filed an additional amendment to her Chapter 13 plan on October 24, 1983, which increases her monthly payments to the Chapter 13 trustee to $275.00. An Order was entered on October 25, 1983, directing the debtor to make direct payments to the Chapter 13 trustee in the amount of $275.00 per month in accordance with the said amendment. Two days later, on October 27, 1983, the aforementioned hearing on Hickey's motion for reconsideration was held.

Hickey's claim arises from a promissory note executed in favor of Bernice Ely by the debtor. The principal amount of the note, dated March 14, 1969, is $7,440.00 and was to have been paid in forty-eight (48)

monthly installments. In addition, the Court has in evidence a security deed dated March 13, 1969 for $7,440.00 from Robert Arnold to Bernice Ely with respect to real property located at 1966 Verbena Street, N.W., Atlanta, Georgia. The security deed is dated March 13, 1969 and signed by Robert and Leola Arnold. Ely's interest under the security deed was transferred to the Republic Land and Investment Company on August 1, 1975. Finally, the Republic Land and Investment Company transferred its rights under the security deed to Hickey on May 27, 1976.

It is uncontroverted that the Arnold-Ely note was in default at the time it was purchased by Hickey on or about May 27, 1976. The debtor brought an action against Hickey in the Superior Court of Fulton County for damages and to quiet title to the property described in the security deed. On February 28, 1983, prior to the commencement of this bankruptcy proceeding, the Superior Court of Fulton County entered an order granting Hickey's motion for summary judgment and denying the debtor's motions. Hickey was awarded $4,185.00 principal plus 8% interest thereon from March 15, 1973. (Accrued interest as of February 28, 1983 totaled $3,333.32.) In addition, Hickey was awarded $751.83 attorney's fees plus 12% interest thereon from the date of the judgment. This decision by the Superior Court of Fulton County was recently affirmed on April 25, 1984. by the Supreme Court of Georgia.

The questions presented by Hickey's motion for reconsideration are: (1) whether the debtor can "modify" Hickey's secured claim against real property that constitutes the debtor's principal residence by paying Hickey's claim through the Chapter 13 plan; and (2) whether Hickey is entitled to receive payments under the plan with a value, as of the effective date of the plan, not less than the allowed amount of Hickey's claim.

### PAYMENT OF HICKEY'S CLAIM THROUGH CHAPTER 13 PLAN IS NOT BARRED BY § 1322(b)

■ It is undisputed that the property described in Hickey's security deed, 1966 Verbena Street, N.W., Atlanta, Georgia is the debtor's principal residence. Hickey contends that § 1322(b)(2) of the Bankruptcy Code prohibits modification of his claim. Section 1322(b)(2) states as follows:

(b) Subject to subsections (a) and (c) of this section, the plan may—

(2) modify the rights of holders of secured claims, *other than a claim secured only by a* security interest *in real property that is the debtor's principal residence* . . .; [Emphasis added.]

First, "curing" a default does not constitute an impermissible modification under § 1322(b)(2). *In re Taddeo*, 685 F.2d 24, 26–27 (2d Cir.1982) ([W]e believe that the power to 'cure any default' granted in § 1322(b)(3) and (b)(5) is not limited by the ban against 'modifying' home mortgages in § 1322(b)(2) because we do not read 'curing defaults' under (b)(3) or 'curing defaults and maintaining payments' under (b)(5) to be *modifications* of claims.") (emphasis original); *Grubbs v. Houston First American Sav. Ass'n*, 730 F.2d 236 (5th Cir.1984). In *Grubbs*, the Fifth Circuit Court of Appeals expressly held that the Chapter 13 debtor could cure the default on a 36-month mortgage loan secured by a second lien on real property that is the debtor's principal residence.

■ Because the debtor in the case *sub judice* proposes no "modification" of Hickey's claim—she merely intends to pay the claim through her Chapter 13 plan—§ 1322(b)(2) is not violated by the debtor's Chapter 13 plan.

■ Alternatively, the Court cannot conclude at this time that Hickey holds *only* a "security interest" as that term is defined in the Bankruptcy Code. Hickey submitted copies of the following documents in support of his proof of claim: (1) the February 28, 1983 order of the Superior Court of Fulton County; (2) the March 14, 1969 Arnold-Ely note; and (3) the March 13, 1969 security deed. Section 101(38) states that " 'security interest' means lien created by an agreement." Presently, by virtue of the

judgment by the Superior Court of Fulton County, Hickey is possibly [1] also the holder of a "judicial lien", which Bankruptcy Code § 101(27) defines to mean a "lien obtained by a judgment, levy, sequestration, or other legal or equitable process or proceeding."

The Bankruptcy Court in *In re Garner*, 4 CBC 2d 1417, 13 B.R. 799, (Bkrtcy.S.D.N.Y. 1981), held that § 1322(b)(2) was not applicable to prevent modification of a creditor's security interest in real property that is the debtor's principal residence where the creditor had obtained a judgment of foreclosure prior to the commencement of the bankruptcy case. In *Garner*, the Chapter 13 debtor's home, valued at $40,000, had been subject to a mortgage which was foreclosed upon prior to bankruptcy. The judgment of foreclosure was in the amount of $48,073.37. The Bankruptcy Court confirmed a plan to pay $40,000 to the mortgagee/judicial lienholder and to pay the balance of the claim in excess of the value of the security at the same percentage as received by other unsecured creditors. In holding that § 1322(b)(2) was not applicable, the Court in *Garner* stated as follows:

> When the [mortgagee/judicial lienholder] obtained its rights under the foreclosure judgment it could no longer assert that its rights in the real estate were "secured only by a security interest" under an existing consensual mortgage and therefore not subject to modification under Code § 1322(b)(2). *In re Jordan*, 2 C.B.C.2d 635 [5 B.R. 59] (B.C.N.J.1980).

*In re Garner*, 4 CBC 2d at 1420, 13 B.R. 799. *Cf. In re Collins*, 19 B.R. 209, 211 (Bkrtcy.S.D.Fla.1982) ($17,742 claim by oversecured mortgagee which had received a judgment of foreclosure prior to bankruptcy may not be paid over three years through the debtors' Chapter 13 plan).

If it becomes necessary, the Court will hold an evidentiary hearing to determine whether Hickey holds a judicial lien so as to permit modification of his claim under *Garner*. However, because the cure proposed by the debtor in the instant case does not contravene § 1322(b)(2), such an evidentiary hearing should not be needed with respect to this facet of Hickey's motion.

### PRESENT VALUE OF CLAIM UNDER § 1325(a)(5)(B)(ii)

■ Hickey argues that his claim is not subject to modification under § 1322(b)(2). At the same time, Hickey asserts that he is entitled to receive the present value of his allowed secured claim pursuant to § 1325(a)(5)(B)(ii). However, this Court has held that § 1325(a)(5)(B)(ii) is not applicable where a claim is immune from modification by § 1322(b)(2). *In re Carr*, 36 B.R. 381 (Bkrtcy.N.D.Ga.1984). In short, the rationale behind *Carr* is that the creditor is entitled to the interest and late charges as provided in the contract under which the claim arose and may not look to § 1325(a)(5)(B)(ii) for the payment of post-petition interest.

Although different policy considerations lie in favor of a residential mortgage lender than arise for a short-term lender which takes a security interest in the debtor's residence, § 1322(b)(2) does not distinguish between these two types of secured creditors. There is some authority to suggest that § 1322(b)(2) should *not* affect a short-

---

**1.** Although Hickey has obtained a final judgment from the Superior Court of Fulton County which has been affirmed by the Supreme Court of Georgia, there is insufficient evidence to conclude that Hickey does, in fact, hold a judicial lien as against the subject property. O.C.G.A. § 9–12–86(b) provides as follows:

> *No judgment*, decree, or order or any writ of fieri facias issued pursuant to any judgment, decree, or order of any superior court, county court, city court, justice of the peace court, municipal court, or any federal court, *shall in any way affect or become a lien upon the title to real property until the judgment*, decree, order, or writ of fieri facias *is recorded in the office of the clerk of the superior court of the county in which the real property is located* and is entered in the indexes to the applicable records in the office of the clerk. Such entries and recordings must be requested and paid for by the plaintiff or the defendant, or his attorney at law. [Emphasis added.]

No evidence is before the Court as to whether Hickey recorded his judgment to create a judicial lien.

term claim against the debtor's residence[2] and that *Carr*, therefore, should not come into play to render § 1325(a)(5)(B)(ii) inapplicable. Nevertheless, the Court is not inclined at this time to reach a holding contrary to the seemingly plain meaning of § 1322(b)(2).

## CONCLUSION

In accordance with the foregoing, Hickey's motion for reconsideration shall be and is hereby DENIED. Hickey is authorized, however, to renew his motion, to the extent that he seeks the present value of his allowed secured claim, by filing an appropriate motion accompanied by evidence or legal argument that *Carr* is not controlling because § 1322(b)(2) does not apply to Hickey's claim. The debtor may cure the default of the Arnold-Ely note under the debtor's Chapter 13 plan, and, unless an Order to the contrary is entered at a later date, the debtor is not required to pay the present value of Hickey's claim as of the date of confirmation.

IT IS SO ORDERED.

---

2. The face of the statute does not limit the applicability of § 1322(b)(2) to long-term mortgage lenders, and the legislative history to § 1322(b)(2) contains no unequivocal statement that *only* the rights of secured long-term mortgage lenders are immune from modification. For an extensive discussion of the legislative history of §§ 1322(b)(2), (b)(3) and (b)(5), see *Grubbs v. Houston First American Sav. Ass'n,* 730 F.2d 236 (5th Cir.1984). See also this Court's opinion in *In re E.Z. Carr,* 36 B.R. 381 (Bkrtcy.N.D.Ga.1984) ("... Congress had two purposes for drafting these sections [§§ 1322(b)(2), (b)(3) and (b)(5) ]: (1) To allow Chapter 13 debtors to protect their homes by curing defaults and making regular payments on their mortgages; and (2) To protect lenders secured only by a security interest in the Chapter 13 debtor's home, especially long-term mortgages."). Accord: *In re Morphis,* 8 CBC 2d 952, 956, 30 B.R. 589 (Bkrtcy.N.D.Ala.1983) ("Although the legislative history is silent, the plain intent of the exception [§ 1322(b)(2) ] is to provide stability in the residential long-term home financing industry and market. It is to specifi-

cally protect institutional lenders engaged only in providing long-term mortgage financing and not lenders primarily engaged in consumer or other areas of financing but who take security interests in a residence or homestead to secure non-home financing debts.") (citing *United Companies Financial Corp. v. Brantley,* 6 B.R. 178, 189 (Bkrtcy.N.D.Fla.1980); *In re Neal,* 10 B.R. 535, 539 (Bkrtcy.S.D.Ohio 1981) ("The Senate version of the bankruptcy legislation supports the theory that congressional intent was to protect mortgage debt that was wholly ... secured by the debtor's real estate."). Contra: *In re Hubbard,* 8 CBC 2d 1012, 30 B.R. 39 (Bkrtcy.W.D.Mo.1983) (nonpurchase-money, short-term debt secured by debtor's principal residence may not be modified according to § 1322(b)(2)).

As a caveat, the Court notes that the aforementioned cases are intended to be merely representative of the split of authority concerning § 1322(b)(2). The Court would not undertake to *hold* that § 1322(b)(2) does not apply to nonpurchase-money, short-term debt without a more exhaustive analysis of legislative history and reported authority.