**In re Estel Ray HOUGLAND and Ruth Evelyn Hougland, Debtors.**

**Civ. No. 88–1016–PA.**
**Bankruptcy No. 388–00874–H13.**

United States District Court,
D. Oregon.

Dec. 12, 1988.

William B. Owens, Bend, Or., for debtors-appellants.

James N. Esterkin, Portland, Or., for appellee.

## OPINION

PANNER, Chief Judge.

Appellants Estel Ray Hougland and Ruth Evelyn Hougland (Debtors) bring this appeal from a final order of the Bankruptcy Court, denying confirmation of their Chapter 13 Plan of Reorganization (Plan). This court has appellate jurisdiction pursuant to 28 U.S.C. § 158(a).

I reverse the decision of the Bankruptcy Court, and order that Debtors' Plan be confirmed.

## BACKGROUND

Appellee Lomas & Nettleton (L & N) holds a first deed of trust and a promissory note secured by Debtors' principal residence. Debtors fell into arrears on their payments, and L & N commenced foreclosure proceedings. Debtors then filed a petition for relief under Chapter 13 of the Bankruptcy Code, which stayed the foreclosure.

It is undisputed that the value of Debtors' homestead was $47,240 at the time the bankruptcy petition was filed. The outstanding balance on the debt was $51,090, including arrearages, interest, foreclosure fees, and late fees.

Debtors' Plan sought to avoid the unsecured portion of the L & N lien (i.e., the difference between the amount of the claim, $51,090, and the value of the property, $47,240) pursuant to 11 U.S.C. § 506(d). L & N objected to the Plan, contending that it impermissibly modified L & N's rights as a creditor secured only by an interest in Debtors' principal residence, in violation of 11 U.S.C. § 1322(b)(2).

The Bankruptcy Court denied confirmation of the Plan. Debtors filed a motion for reconsideration, which was denied. Debtors then filed a notice of appeal.

## STANDARD OF REVIEW

This court must uphold the Bankruptcy Court's findings of fact unless they are clearly erroneous. Conclusions of law are reviewed *de novo. Daniels–Head & Assoc. v. Mercer, Inc. (In re Daniels–Head & Assoc.)*, 819 F.2d 914, 918 (9th Cir.1987).

## DISCUSSION

### I. *Timeliness of the Appeal*

■ L & N contends that Debtors' appeal was not timely filed. L & N argues that pursuant to Bankruptcy Rule 8002(a), Debtors had ten days from the entry of the initial order in which to file an appeal. L & N claims that Debtors obtained a twenty-day extension, pursuant to Bankruptcy Rule 8002(c), but that Debtors did not file the appeal until thirty-one days after the entry of the initial order.

Debtors correctly note that if a timely motion is filed under bankruptcy Rule 9023 to alter or amend a judgment, the time for filing an appeal runs from the entry of the order denying the motion. Bankruptcy Rule 8002(b). In the Ninth Circuit, a motion for reconsideration is treated as a motion to amend a judgment. *Bentley v. Bank of Coronado (In re Crystal Sands Properties)*, 84 B.R. 665, 668 n. 3 (Bankr. 9th Cir.1988) (citations omitted).

The initial order was issued denying confirmation on April 26, 1988. Debtors filed the motion to reconsider on May 5, 1988, within ten days of the initial order. Until there was a ruling on that motion, Debtors could not have filed an appeal. The motion was denied on May 26, 1988, and Debtors filed a notice of appeal on May 27, 1988, well within the ten day rule. The appeal was timely filed.

### II. *Additional Security*

■ L & N objected to the Plan on the grounds that it modified L & N's rights as a creditor secured only by a security interest in Debtors' principal residence. L & N argues that such a modification violates 11 U.S.C. § 1322(b)(2). Section 1322(b)(2) of the Bankruptcy Code provides that a Chapter 13 Plan may "modify the rights of holders of secured claims, *other than* a claim secured *only* by a security interest in real property that is the debtor's principal residence." (Emphasis added.)

Debtors argue that L & N may not invoke the protection of section 1322(b)(2) because the deed of trust contains language that grants L & N "as *additional security* ... all rents, issues, royalties, and profits of the property...." Record at 19. (Emphasis added). Therefore, according to Debtors, L & N's claim is not secured "only" by an interest in Debtors' principal residence.

Debtors rely on *Caster v. United States (In re Caster)*, 77 B.R. 8 (Bankr.E.D.Pa. 1987). In *Caster*, the court held that a mortgage granting a security interest in "rents, issues, and profits," and in "appliances, machinery, furniture and equipment (whether fixtures or not)," precluded a secured creditor from invoking the protection of section 1322(b)(2). *Id.* at 9. The court noted a distinction between the "rents, issues, and profits" language, which was part of a form recitation, and the language granting an interest in appliances and furniture, which had been added to the recitation by the mortgagee. *Id.* at 11. *See also In re Crompton*, 73 B.R. 800, 805–06 (Bankr.E.D.Pa.1987) (mortgage with security interest in appliances and furniture was not secured only by debtor's residence); *In re Jablonski*, 70 B.R. 381, 386 (Bankr.E.D. Pa.1987) (mortgage including a security interest in rents, issues, profits and certain appliances was not secured only by debtor's residence).

I have not found, and Debtors do not cite, a case in which a court has held that the "rents, profits, and issues" language, without more, is sufficient to remove a mortgagee from the protection of section 1322(b)(2). The Bankruptcy Court held that the right to "rents, issues, and profits" is a benefit incident to ownership of the property, and that a lien on the "rents,

issues, and profits" could not be distinguished from the lien on the property. Because there is no language in the deed of trust granting L & N a security interest in specific personalty, I find that L & N's claim is secured only by an interest in Debtors' homestead. Therefore, L & N's claim comes within the scope of section 1322(b)(2).

### III. *Avoidance of Unsecured Portion of L & N's Claim*

■ Because section 1322(b)(2) applies to L & N's claim, the dispositive issue in this appeal is whether avoidance of the unsecured portion of that claim is a prohibited modification within the meaning of section 1322(b)(2). ·I find that it is not.

The Bankruptcy Code, 11 U.S.C. § 506(a), provides for an initial determination of a creditor's secured status.[1] There is no dispute that under section 506(a). L & N has a secured claim of $47,240 and an unsecured claim of $3,850. Section 506(d) further provides that "[t]o the extent that a lien secures a claim against the debtor that is not an allowed *secured* claim, such lien is void...." (Emphasis added.)

L & N contends that its entire claim comes within the protection of section 1322(b)(2), because the claim is secured *only* by an interest in Debtors' residence. L & N argues that avoidance of a portion of its claim, through operation of section 506(d), is an impermissible modification of its rights under section 1322(b)(2). L & N argues that applying the two Bankruptcy Code sections together results in a conflict. Therefore, L & N concludes, the more specific provisions of section 1322 should prevail over the general provisions of section 506, and the Plan must not be confirmed.

Debtors argue that the protection afforded by section 1322 applies only to creditors whose claims are *fully* secured. Debtors contend that the Plan does not impermissibly modify the secured portion of L & N's claim; rather it avoids only a portion of the claim defined as unsecured by section 506(a). Debtors assert that the two Code sections can and should be read together to reach this result.

The case law is split on how to construe the interplay between sections 506 and 1322. The Bankruptcy Court's opinion, which held the sections to be conflicting, is the only case I have found in this jurisdiction to address the precise question. Although L & N relies in part on *Seidel v. Larson (In re Seidel)*, 752 F.2d 1382 (9th Cir.1985), that case is inapposite. While *Seidel* discussed the definition of an impermissible "modification" to a creditor's rights under section 1322(b)(2), it involved a mortgagee whose claim was fully secured. The court did not address the issue of how to construe sections 506 and 1322 together when a portion of a claim is unsecured.

There are three groups of cases which analyze the interplay between the two sections. The first group of cases holds that section 1322(b)(2) does not protect undersecured junior mortgage holders. Section 506(d) may be applied to void the unsecured portion of such claims. *See, e.g., In re Simmons*, 78 B.R. 300 (Bankr.D.Kan.1987) (where second mortgage was under-collateralized, mortgagee was not protected by no-modification proviso of section 1322(b)(2), and unsecured portion of claim could be avoided under section 506(d)). The reasoning behind this line of cases is that junior mortgages are often undersecured, and the purpose of section 1322(b)(2) is to protect long-term purchase money mortgage lenders, not short-term finance company lenders. *See In re Bruce*, 40 B.R. 884 (Bankr.W.D.Va.1984). These cases provide only indirect support for Debtors' position, because they do not involve undersecured first mortgage claims.

The second group of cases, on which L & N relies, holds that the unsecured portion of a junior lienholder's claim may not be avoided by operation of section 506(d). *See*

---

1. 11 U.S.C. § 506(a) provides:
   An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim....

*In re Hynson*, 66 B.R. 246 (Bankr.D.N.J. 1986). The *Hynson* court reasoned that the sections were in conflict because application of the "cramdown" provisions of Section 506 would largely vitiate the protections of section 1322. *Id.* at 252. The court held that because section 506 applies generally in cases under Chapters 7, 11, and 13, and because section 1322 applies only in Chapter 13 cases, the specific must prevail over the general. *Id.* at 249–50.

As with the first group of cases, the *Hynson* reasoning has been applied only in situations involving undersecured junior mortgages. It therefore does not directly support L & N's position. *But see In re Russell*, 93 B.R. 703 (D.N.D.1988) (applies the *Hynson* reasoning to an undersecured first mortgage).

The third group of cases adheres to the view that the unsecured portion of a first mortgage may be avoided by operation of section 506 without creating an impermissible modification of the mortgagee's rights under section 1322(b)(2). This view was expressed as dicta in *Caster v. United States (In re Caster)*, 77 B.R. 8 (Bankr.E.D.Pa.1987).

In *Caster*, the court confirmed the debtor's Plan on the basis that the mortgagee's claim did not fall within the scope of section 1322 because the claim was not secured "only" by an interest in debtor's residence. However, the court went on to state that, even if the claim were within the scope of section 1322(b)(2), bifurcation of the allowed claim pursuant to section 506 would be proper. *Id.* at 13. The court reasoned that principles of statutory construction required section 1322 to be read as consistently as possible with section 506. *Id.* The court stated that section 1322(b)(2) should only protect "those security interests which really exist rather than those of claims which are fully secured on paper only and, in actuality, are undersecured." *Id.* Finally, the court noted that most first mortgages are fully secured, and therefore only a small number of debtors need to take advantage of section 506(d) in regard to their home-purchase mortgagees. *Id.*

The more recent case of *Kehm v. Citicorp Homeowners Serv., Inc. (In re Kehm)*, 90 B.R. 117 (Bankr.E.D.Pa.1988), held directly that application of section 506 to an undersecured first mortgage did not create the type of modification prohibited by section 1322(b)(2). The court stated that while section 1322 prohibits a Chapter 13 Plan from modifying a mortgagee's rights, it does not prohibit procedures outside the Plan from doing so. *Id.* at 120. The court found that both the plain meaning and a functional interpretation of the two sections require this result, since "[s]ection 506 provides the process by which we determine *whether a claim is, in fact, secured.*" *Id.* (emphasis added).

*Collier on Bankruptcy* also supports this approach:

> [S]ince this section [1322(b)(2)] only applies to modification of the rights of holders of claims by the chapter 13 plan, *it does not affect the determination of the allowed secured claim through operation of section 506.* Hence an undersecured claim secured only by a security interest in the debtor's principal residence may still be divided into an allowed secured claim and an allowed unsecured claim, with the lien declared void to the extent it secures a claim in excess of the allowed secured claim.

5 *Collier on Bankruptcy*, 1322.06[1][a], at 1322–15 (15th ed. 1988) (footnotes omitted) (emphasis added).

I conclude that this third group of cases and *Collier on Bankruptcy* provide the better-reasoned view. L & N's security interest in Debtors' residence can only be protected by the no-modification clause of section 1322(b)(2) to the extent that the claim is actually secured. Normally, a first mortgage is fully secured. In this case, L & N's claim became undersecured in part due to the imposition of foreclosure fees and interest charges on late payments.

Finally, it is important to note that the Debtors' proposed Plan will leave L & N no worse off than would a foreclosure sale or a Chapter 7 proceeding. Under Oregon law, a decree of foreclosure on a purchase money mortgage does not allow the mortgagee to obtain a deficiency judgment.

ORS 88.070. This is a purchase money mortgage. ORS 88.075. If Debtors had not filed a Chapter 13 petition, L & N could not have recovered a deficiency judgment. Similarly, if Debtors had filed under Chapter 7, the unsecured portion of the claim could have been avoided pursuant to section 506(d). *O'Leary v. State of Oregon (In re O'Leary)*, 75 B.R. 881 (Bankr.D.Or. 1987).

The Bankruptcy Code must be equitably interpreted to accomplish its purposes, one of which is to provide Debtors with a fresh start. *In re Simmons*, 78 B.R. at 304 (citing *Bank of Marin v. England*, 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966)). It would be inconsistent with this purpose to allow L & N to do better under Debtors' Chapter 13 Plan than it would do if Debtors had not filed at all.

## CONCLUSION

Sections 506 and 1322(b)(2) of the Bankruptcy Code can and should be read as consistent with each other. Avoidance of the unsecured portion of L & N's lien on Debtors' principal residence is not an impermissible modification of its rights. I reverse the Bankruptcy Court's decision and remand for confirmation of the Plan.