In re Joseph F. KLEIN, Barbara A. Klein, Debtors.

**Bankruptcy No. 89–10119S.**

United States Bankruptcy Court, E.D. Pennsylvania.

Oct. 19, 1989.

---

tional Co. (hereinafter "Mid–Penn"), to confirmation of the Debtors' Chapter 13 Plan. Because Mid–Penn's loan secured by its mortgage matures under its original terms prior to the date on which the Debtors' final payment under their Plan is due, Mid–Penn argues that 11 U.S.C. § 1322(b)(2) bars the Debtors from purportedly "modifying" its rights by proposing a Plan which fails to require the Debtors to make at least their regular monthly payments under the terms of the loan.

We reject Mid–Penn's contentions for three separate reasons: (1) The loan is secured by property other than the Debtors' real estate, rendering § 1322(b)(2) inapplicable; (2) The original terms of the loan and its security documents merged into a pre-petition judgment, payment of which is not subject to the loan terms; and (3) The Debtors' Plan proposing to cure the loan delinquency by paying it off does not affect a "modification" of Mid–Penn's claim, especially since we find that the full value of Mid–Penn's claim must be paid to it pursuant to 11 U.S.C. § 1325(a)(5)(B)(ii). However, because it appears that Mid–Penn possibly justifiably relied on the Debtors' making current payments to it in filing its proof of claim, we shall delay confirmation to allow Mid–Penn an opportunity to file an amended proof of claim in light of our conclusions reached herein.

### B. PROCEDURAL HISTORY.

The Debtors, JOSEPH F. KLEIN and BARBARA KLEIN, filed a voluntary joint petition for relief under Chapter 13 of title 11, United States Code, on January 9, 1989. With their petition, the Debtors filed a Plan calling for forty-five (45) payments of $220 per month which would be distributed to their creditors through the Trustee. Under the Plan, Mid–Penn was to receive payments against "its secured judgement [sic] in full in the amount of $6112.78 plus interest." The last payment under the Plan would be made in September, 1992.

On April 11, 1989, Mid–Penn[1] filed its Amended Proof of Claim. Therein, it

Jacquelyn A. Barnes, Philadelphia, Pa., for debtors.

Edwin Seave, Philadelphia, Pa., for Mid–Penn Nat. Co.

Edward Sparkman, Philadelphia, Pa., Standing Chapter 13 Trustee.

### OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION.

At issue herein are Objections of a holder of a second mortgage on the residential real estate of the Debtors, Mid–Penn Na-

---

1. The claimant was, probably erroneously, designated on the Amended Proof of Claim as "Mid–Penn Consumer Discount Company."

claimed arrearages totalling $4,767.21, made up of Principal of $2,850, Interest of $1,081.94, Legal costs of $247, and "additional interest" of $588.77.[2] It further recited, in the Amended Proof of Claim, that this sum was to be paid "inside" the Plan, and that the sum of $5,415.00 was to be paid "directly to [Mid–Penn]."[3]

On May 31, 1989, Mid–Penn filed an Objection to confirmation of the Debtors' Plan. The Objection was a boiler-plate statement, identical to that asserted by Mid–Penn in *In re Ford,* 84 B.R. 40, 41 (Bankr.E.D.Pa.1988), that "[t]he debtor's [sic] Plan calls for [Mid–Penn] to receive regular monthly payments on account of its secured debt from the date of filing of the bankruptcy petition," and that the Debtors had failed to make all such payments to date. It can be noted that, in fact, the Plan did *not* provide for Mid–Penn to receive its regular monthly payments and that therefore the recitations in the Objection were, at least in part, misplaced.

On June 8, 1989, Mid–Penn filed a motion for relief from the automatic stay in order to allow it to foreclose on its mortgage because the Debtors had failed to make the regular post-petition payments. The Debtors answered that they were current on *Plan* payments under a confirmable plan and that therefore Mid–Penn's motion failed to state a·cause of action. In the absence of the undersigned, this matter was heard by our colleague, the Honorable Bruce Fox, on July 6, 1989. On July 11, 1989, Judge Fox issued an Order and Memorandum denying Mid–Penn's motion. Although Judge Fox acknowledged the possible validity of Mid–Penn's argument that inconsistency of the Debtors' Plan with 11 U.S.C. § 1322(b)(2) might compel denial of confirmation, he noted that a skimpy factu-

al record rendered him incapable of determining whether the loan was secured by only the Debtors' realty (and hence whether § 1322(b)(2) was applicable) and whether the Debtors' obligation was in fact merged in a prepetition judgment (which might have precluded reliance on § 1322(b)(2)). The Memorandum closed by expressly declining to rule on whether Mid–Penn might succeed in objecting to confirmation if "[a] complete factual record" were developed in the confirmation process.

As might have been expected considering the foregoing, Mid–Penn appeared at the confirmation hearing on September 7, 1989, poised to press its Objections to confirmation based on the Plan's alleged inconsistency with § 1322(b)(2). After an extended colloquy, we accorded Mid–Penn the opportunity to raise these Objections, despite the fact that they were quite different from those set forth in the written Objection filed of record by it. We also allowed each party to admit into the record a designated list of documents and other materials which each contended were pertinent for purposes of deciding these Objections. The parties were accorded until October 6, 1989, to simultaneously file Briefs supporting their respective positions, with any of the documents deemed significant by either party to be attached to their respective Briefs. These submissions were timely filed.

## C.  PERTINENT FACTS.

The Brief of Mid–Penn, by far the more comprehensive submission, recites the pertinent facts in a fashion which we adopt, with certain necessary additions and changes. The Debtors entered into a secondary mortgage[4] loan contract with Mid–

---

**2.**  It is not clear how sum was calculated and it may be impermissible, if objected to, on the basis of the holdings in *In re Capps,* 836 F.2d 773 (3d Cir.1987); and/or *In re Jordan,* 91 B.R. 673, 677–78 (Bankr.E.D.Pa.1988).

**3.**  It is unclear to us whether Mid–Penn means to make a total claim for the sum of these figures, or $10,182.71. Our uncertainty concerning Mid–Penn's assumptions in filing this Proof of

Claim cause us to allow it to further amend its Proof of Claim. *See* pages 404–05 *infra.*

**4.**  The Debtors are apparently current on their first mortgage, owed to Germantown Savings Bank, and are continuing to make these payments outside of the Plan, as is permissible. *See In re Waldman,* 81 B.R. 313, 314 (Bankr.E. D.Pa.1987); and *In re Evans,* 66 B.R. 506, 509–10 (Bankr.E.D.Pa.1986), *aff'd,* 77 B.R. 457 (E.D. Pa.1987).

Penn on August 1, 1985. The contract contemplated payments of $285.00 monthly for sixty (60) months, the first payment being due September 10, 1985, and the final payment being due on August 10, 1990.

The Debtors executed a note, a Truth-in-Lending disclosure statement (hereinafter designated as "DS"), and a second mortgage on their home as evidence of their obligation. The mortgage contained the following clauses:

"The Condition of this Obligation is such, That if the Obligee shall:

.    .    .    .    .

3. With respect to the premises described in the Mortgage accompanying this Obligation:

(a) Maintain and deliver to Obligee, *as further security for this Obligation,* insurance (with non-contributory mortgagee clauses, in form and companies approved by Obligee) against such hazards and in such amounts as Obligee at any time requires; Obligee may, as irrevocable attorney for and with joinder of Obligor, claim, settle and receive all payments thereunder, or under any condemnation proceedings, which payments it may apply to this indebtedness (even if not due) or to remedy the damage; ...

.    .    .    .    .

Then the above Obligation to be void, or else remain in full force and effect."

.    .    .    .    .

NOW THIS INDENTURE WITNESSETH, that the Mortgagor, in consideration of the principal sum and for securing performance of all provisions of the said Obligation, intending to be legally bound, does hereby grant and convey unto the Mortgagee:

.    .    .    .    .

TOGETHER with all and singular the Buildings, Streets, Alleys, Passages, Ways, Waters, Water Courses, Rights, Liberties, Privileges, Improvements, Hereditaments and Appurtenances whatsoever thereunto belonging, or in any wise appertaining, and the *Reversions and Remainders, Rents, Issues and Profits* thereof; and *also together with all plumbing, heating* and lighting equipment, or machinery [the previous five words are crossed off] now or hereafter installed upon the above described premises, notwithstanding any of such are capable to severance without harm to the real estate ... (emphasis added).

The DS contained the following recitation as to security interests taken by Mid–Penn:

SECURITY: You are giving a Security Interest In:

___ Your Household goods

_x_ Your Real Estate located at: 2551 SOUTH 62ND STREET, PHILADELPHIA, PENNSYLVANIA 19142

COLLATERAL SECURING OTHER LOANS WITH US MAY ALSO SECURE THIS LOAN.

The Debtors last made a payment to Mid–Penn on March 28, 1988, which was the payment due on March 10, 1988. Mid–Penn responded by filing a civil lawsuit on the note on September 15, 1988, in the Philadelphia County Court of Common Pleas, September Term 1988, No. 1723. Therein, Mid–Penn obtained a default judgment on or about October 25, 1988, in the amount of $6,112.78. The Debtors have made no post-petition payments to Mid–Penn pursuant to the terms set out in the loan documents. However, they are current in all required Plan payments.

D. BECAUSE MID–PENN HAS TAKEN SECURITY INTERESTS IN PROPERTY OF THE DEBTORS OTHER THAN THEIR REAL PROPERTY, 11 U.S.C. § 1322(b)(2) IS INAPPLICABLE.

The Bankruptcy Code sections, interpretation of which are in issue here are 11 U.S.C. §§ 1322(b)(2), (b)(3), (b)(5), which provide as follows:

(b) Subject to subsections (a) and (c) of this section, the plan may—

(2) modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence,* or of holders of

unsecured claims, or leave unaffected the rights of holders of any class of claims;

(3) provide for the curing or waiving of *any* default; ...

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim *on which the last payment is due after the date on which the final payment under the plan is due;* ... (emphasis added).

Although neither party cites to *Ford, supra,* in their Briefs, the issues here were addressed in dictum there on similar facts, 84 B.R. at 42–45.

As in *Ford,* we conclude that § 1322(b)(5) is inapplicable, because the last payment of the Debtors is due on Mid–Penn's obligation on August 10, 1990, a date *before* the contemplated date of the last plan payment, September, 1992. *Id.* at 43.

■ However, § 1322(b)(2) is quite clearly also inapplicable because Mid–Penn has taken a security interest in, *inter alia,* hazard insurance proceeds, any personalty supplying heating to the Debtors brought into the premises, and, possibly, undesignated collateral securing other loans.

In its Brief, Mid–Penn, anticipating a non-existent argument on this point from the Debtors, concentrates on contending that its taking security in "rents, issues, and profits" does not extend the security taken beyond the Debtors' realty, citing *In re Hougland,* 93 B.R. 718, 720–21 (D.Ore. 1988). In that case, the court concluded that "the 'rents, profits, and issues' language, *without more,* ... is a benefit incident to ownership of the property [which] could not be distinguished from the lien on the property." *Id.* (emphasis added). Therefore, such language, standing alone, is there held insufficient to remove a mortgagee from the protection of § 1322(b)(2).

In so holding, the *Hougland* court distinguishes our decisions in *In re Caster,* 77 B.R. 8, 11–12 (Bankr.E.D.Pa.1987); *In re Crompton,* 73 B.R. 800, 805–06 (Bankr.E. D.Pa.1987); and *In re Jablonski,* 70 B.R. 381, 386 (Bankr.E.D.Pa.1987), *aff'd,* 88 B.R. 652 (E.D.Pa.1988), because the mortgages there included language evidencing a security interest in appliances and furniture as well as rents, issues, and profits of the realty.

Here, however, Mid–Penn has taken a security interest in *"all* plumbing, [and] heating ..." (emphasis added) in the premises, as well as "Rents, Issues, and Profits thereof." Clearly, this recitation would sweep into the category of secured property any heating devices, including space heaters, at the premises, as well as a home's central heating plant. Therefore, the instant mortgage includes at least certain "appliances," and would not qualify under § 1322(b)(2) under the *Hougland* court's analysis.

We also must confess that we are, in any event, unable to agree with the *Hougland* court's analysis. The added terms, "rents, issues, and profits thereof" must mean that security is taken in *something* other than the realty itself or they would not be included in the documents.[5] If Mid–Penn wished to forego any such security interest, it clearly could have done so by striking same, as it did the reference to lighting equipment and machinery at the premises. Therefore, we can only conclude that "rents, issues, and profits" from the premises are property in which Mid–Penn has chosen to take a security interest in addition to the Debtors' realty itself.

Mid–Penn does not discuss the security interest which it has taken in hazard-insurance proceeds. This alone is enough to take the mortgage out of the realm of § 1322(b)(2).

■ We concede that there is a pregnant contingency in the security which Mid–

---

5. The law of Pennsylvania regarding a mortgagee's security interest in rents of the mortgagor is, for example, highly complex. *See In re TM Carlton House Partners, Ltd.,* 91 B.R. 349, 352–55 (Bankr.E.D.Pa.1988); and *In re DiToro,* 17 B.R. 836, *reconsidered,* 22 B.R. 392 (Bankr.E.D.

Pa.1982). The text of the mortgage is significant in determining the rights of the mortgagee. *Cf. In re Panas,* 100 B.R. 734, 738–40 & n. 9 (Bankr.E.D.Pa.1989) (discusses rights of a mortgagee in possession to rents in a lease given by a mortgagor).

Penn may have taken from the Debtors in other loans to them. We are unaware of whether the Debtors had or have any other loans with Mid–Penn or what the scope of security taken therein might be. However, again, we cannot assume that the language included in the DS, by specifically *adding* it to the form, is meaningless. This potential security interest is disclosed by Mid–Penn on the DS for *some* purpose. We note that an additional inchoate or contingent security interest in certain property is sufficient to remove a mortgage from the scope of § 1322(b)(2). *See Caster, supra,* 77 B.R. at 12. *Cf., e.g., Bizier v. Globe Financial Services, Inc.,* 654 F.2d 1, 3 (1st Cir.1981); *In re Cervantes,* 67 B.R. 816, 819 (Bankr.E.D.Pa.1986) (per GOLDHABER, CH. J.).

Finally, we note that Mid–Penn has taken a pre-petition judgment against the Debtors. The lien upon the Debtors' realty effected by this judgment may also be sufficient additional security in itself to remove Mid–Penn's instant security interest from the scope of § 1322(b)(2). *See In re Arnold,* 40 B.R. 144, 146–47 (Bankr.N.D.Ga.1984). The significance of this judgment shall be revisited, from another angle, shortly hereafter.

For all of the foregoing reasons, we conclude that the security interest taken by Mid–Penn against the Debtors, as evidenced by the pertinent loan documents, is not within the very narrow scope of § 1322(b)(2). Therefore, that Code section is inapplicable. The foundation of Mid–Penn's only argument in support of its Objections is thus cut from under it.

E. THE OBLIGATIONS OF THE DEBTORS TO MID–PENN ARE MERGED IN ITS PRE–PETITION JUDGMENT AGAINST THEM, WHICH DOES NOT CONTAIN ANY PAYMENT TERMS, THUS ELIMINATING ANY CLAIM THAT MID–PENN COULD RELY UPON § 1322(B)(2).

█ There is, moreover, another, independent, alternative basis upon which it can be concluded that Mid–Penn is incapable of invoking § 1322(b)(2) here. As Judge Fox stated in his Memorandum, from which Mid–Penn has not appealed and which hence remains the law of this case, *see, e.g., In re Cole,* 89 B.R. 433, 436 (Bankr.E.D.Pa.1988), if Mid–Penn in fact had a judgment embracing the entire obligation secured by the mortgage, then Mid–Penn is confined, by the doctrine of merger, to status as a judgment creditor, the payment of whose obligation is not called for at any particular time. This is the sole argument made by the Debtors in their very short Brief.[6]

Mid–Penn does not dispute the principles set down by Judge Fox, nor the principle that an obligation, even if totally accelerated pre-petition and the subject of a judgment for the entire balance due subsequent to acceleration, may be cured in a Chapter 13 Plan. It also does not dispute that a mortgage merges with a judgment in a foreclosure proceeding. *See In re Rorie,* 98 B.R. 215, 218–19 (Bankr.E.D.Pa.1989) (FOX, J.); *In re Ocasio,* 97 B.R. 825, 826 n. 1 (Bankr.E.D.Pa.1989) (TWARDOWSKI, CH. J.); *In re Smith,* 92 B.R. 127, 129–31 (Bankr.E.D.Pa.1988), *rev'd in part on other grounds sub nom. Smith v. Kissell Co.,* 98 B.R. 708 (E.D.Pa.1989); and *In re Herbert,* 86 B.R. 433, 436–37 (Bankr.E.D.Pa.1988), *aff'd sub nom. Herbert v. Federal National Mortgage Ass'n,* 102 B.R. 407 (E.D.Pa.1989). Rather, it argues that, since its judgment was obtained in an action on the note accompanying the mortgage instead of on the mortgage itself, the mortgage is not merged with the instant judgment on the note.

Mid–Penn cites no authority for this argument, and we could not locate any authority to support it either. In fact, ample authority establishes that the obligation set forth in a note merges with a judgment on the note, just as a mortgage obligation merges with a foreclosure judgment. *See,*

---

**6.** In all fairness to the Debtors, it is apparent, from a review of the Debtors' Plan, that they at all times perceived Mid–Penn's claim as that of a *judgment* creditor and they dealt with it accordingly. The only filings made by the Debtors which are inconsistent therewith were the figures in the Budget contained in their Chapter 13 Statement. *See* page 405 & n. 12 *infra.*

*e.g., In re Crane Automotive, Inc.,* 98 B.R. 233, 236 (Bankr.W.D.Pa.1989); *Lance v. Mann,* 360 Pa. 26, 28, 60 A.2d 35, 36 (1948); *Sykes v. Gerber,* 98 Pa. 179, 182–84 (1881); 46 AM.JUR.2d 551–58 (1969); and 1 RESTATEMENT (SECOND) OF JUDGMENTS, § 18 (1982). Moreover, the limited authority directly on point holds that the obligation of a note merges with a judgment on a mortgage accompanying the note, *Yeomans v. Rexford's Executor,* 35 Pa. 273, 274 (1860), and that, as here, the obligation of a mortgage apparently merges with a judgment on a note accompanying the mortgage. *In re Schlecht,* 36 B.R. 236, 240–41 (Bankr.D.Alas.1983).

The existence of the judgment, now clearly spread out on this record as opposed to being merely mentioned, as in the contested matter before Judge Fox, also renders § 1322(b)(2) totally inapplicable. The Debtors have undertaken to liquidate their obligation to Mid–Penn in full in their Plan. *See Rorie, supra,* 98 B.R. at 218–19; and *Smith,* 92 B.R. at 130–31. Therefore, they are obliged, as they seem to recognize, to compensate Mid–Penn with interest for the right to defer this obligation. *See* 11 U.S.C. § 1325(a)(5)(B)(ii); *Smith, supra,* 92 B.R. at 130; [7] and *Jordan, supra,* 91 B.R. at 677–78. The rate of interest to be paid, upon confirmation of the Plan, must be the lower of the contract rate or the "market rate" of interest. *In re Mitchell,* 77 B.R. 524, 529 (Bankr.E.D.Pa.1987). The upshot is that a creditor such as Mid–Penn must be compensated for being obliged to allow a debtor to extend the time of making full payment of its judgment debt to it. *See* n. 7 *supra.* There is no just basis for refusing to recognize the debtor's right to do so. Since a pre-petition judgment is in place here, causing the note, the mortgage, and all concurrent obligations to merge in it, the Debtors are clearly entitled to cure their obligation to Mid–Penn over the full length of their Plan.

**F. PAYING AN OBLIGATION IN FULL OVER A PLAN IS, IN ANY EVENT, A "CURE," NOT A "MODIFICATION" BARRED BY § 1322(b)(2).**

In the prior two discussions, we have concluded, on separate alternative bases, that Mid–Penn is not entitled to invoke § 1322(b)(2) against the instant Debtors. However, assuming *arguendo* that § 1322(b)(2) did apply, we conclude, as we did in *Ford, supra,* 84 B.R. 42–44, that the "modification" of the rights of a secured creditor proscribed by § 1322(b)(2) does not include the "curing" of an obligation by paying it in full, subject to § 1325(a)(5), in particular § 1325(a)(5)(B)(ii), as the Debtors have opted to do here.

In *Ford,* we reached the following conclusions, 84 B.R. at 43–44:

At the outset, we reiterate our statement in *In re Small,* 65 B.R. 686, 689 (Bankr.E.D.Pa.1986), *aff'd,* 76 B.R. 390 (E.D.Pa.1987), that the interplay of §§ 1322(b)(2) and (b)(5) is less than clear. However, we also reiterate our one definitive statement therein regarding their interplay: "there is a significant difference between the 'curing of any default,' which is the subject matter of § 1322(b)(5), and 'modification of the rights of holders of secured claims,' which is the subject matter of § 1322(b)(2)." Our principle sources of authority for this statement were opinions of two Court of Appeals, *Grubbs v. Houston First American Savings Ass'n,* 730 F.2d 236, 240–42 (5th Cir.1984) (en banc); and *In re Taddeo,* 685 F.2d 24, 27–28 (2d Cir.1982). Particularly convincing to us was the detailed historical analysis presented by the *Grubbs* court, in a decision adopted by a 10–4 vote by the court en banc.

Subsequent to our decision in *Small, supra,* our own Court of Appeals has decisively spoken twice on the same sub-

---

**7.** We would note one error in the reasoning of *Smith,* 92 B.R. at 131; and *Herbert,* 86 B.R. at 438, which, although not raised therein, should be corrected. If a creditor is oversecured, it should, by virtue of 11 U.S.C. § 506(b), receive post-judgment interest through the date of con-

firmation of the Plan. The deferral rate would be effective after confirmation. Therefore, there should be no lapse in the period in which an oversecured creditor is compensated, at least to some degree, for the delay in satisfaction of its claim.

ject. In *In re Roach*, 824 F.2d 1370, 1374–77 (3d Cir.1987) the court, citing *Grubbs* and *Taddeo* with approval, concurred with their common conclusion as to the interplay between §§ 1322(b)(2) and (b)(5). The Court concluded as follows, 824 F.2d at 1376:

"Based upon the foregoing, we conclude that Congress did not view a cure of a home mortgage as a modification of the holder's rights within the meaning of § 1322(b)(2) and, accordingly, that neither the power to cure under § 1322(b)(3) nor the power to cure under § 1322(b)(5) is limited by the provision of § 1322(b)(2) prohibiting modification of home mortgages. *Accord, e.g., In re Taddeo*, 685 F.2d at 27; *Grubbs*, 730 F.2d at 241–42, 247 [sic—should be 246]–47. Nothing in § 1322(b)(3) limits its authority to cure to pre-acceleration defaults and the Court of Appeals for the Second circuit relied upon that fact in holding that § 1322(b)(3) authorized a post-acceleration cure of a longterm mortgage. *In re Taddeo*, 685 F.2d at 28. Although we are inclined to view the relationship between § 1322(b)(3) and § 1322(b)(5) somewhat differently, we agree that the authority conferred by § 1322(b)(3) cannot be limited to pre-acceleration—cures and we believe that fact is important in evaluating the argument that the concluding clause of § 1322(b)(5) limits the authority therein conferred to unaccelerated mortgage obligations.

Based on text legislative history, we believe § 1322(b)(5) was intended to make it clear that the power to cure extends to longterm obligations that will survive beyond the life of the plan. When § 1322(b)(5) is so viewed, the function of § 1322(b)(3) is to provide authority for curing obligations that will be paid off during the life of the plan. *See Grubbs*, 730 F.2d at 243–45."

Moreover, the Court of Appeals reiterated the substance of its aforesaid holding of *Roach* in *In re Capps*, 836 F.2d 773 (3d Cir.1987), wherein it affirmed the substance of our holding that

a secured creditor could not demand interest on mortgage arrearages in *Small*. There, the Court noted that, in *Roach*, "we concluded that Congress did not see cure as effecting a modification of creditors' interests."

We agree with the Objector's assertion that § 1322(b)(5) is not authority for the Debtor's attempt to cure his defaults in the obligation owed to the Objector, since the last payment on the obligation is due before the final payment due under the Plan. However, we disagree with its assertion that the prohibitory language of § 1322(b)(2), relating solely to attempts to "modify" secured claims rather than "curing" defaults in their payment, is applicable. The Code section which we think is applicable here is § 1322(b)(3), which simply allows a Chapter 13 debtor to provide for curing and waiving *any* default. The passage quoted from *Roach* at page 43 *supra* clearly holds that the broad language of § 1322(b)(3) is not limited at all by § 1322(b)(2), and is further not limited by § 1322(b)(5) when the last payment on the obligation in issue is due prior to the last payment under the plan. Therefore, we believe that the Debtor's efforts to cure his rather modest post-petition defaults are within from the broad scope of plan provisions expressly authorized by § 1322(b)(3).

A result contrary to that which we reached in *Ford* appears anomalous. Irrespective of § 1322(b)(2), a debtor is always entitled to cure a mortgage obligation which has been accelerated, but not reduced to judgment, pursuant to 11 U.S.C. § 1322(b)(3). *Roach, supra*, 824 F.2d at 1374–77. A cure is permitted even where a state court mortgage foreclosure judgment reduces the accelerated loan balance to judgment if, under state law such as that of Pennsylvania, the judgment does not terminate the mortgagor's rights of redemption. *See In re Brown*, 75 B.R. 1009, 1011–12 (Bankr.E.D.Pa.1987). Also, as we held in the discussion in the last headnote, at pages 401–02 *supra*, a debtor can generally cure an obligation reduced to judg-

ment. Therefore, it would make no sense to preclude the cure of an obligation just because, under its original terms, prior to acceleration, it happened to fall due prior to the termination of the plan. It should, moreover, be recalled that the obligee will be compensated for the deferral of its obligation.

Many courts have agreed with our reasoning in *Ford*, even in the somewhat more difficult context of a cure of an obligation under which, pursuant to its original terms, *all* of the payments were due as of the date of the debtor's filing of a Chapter 13 petition. *See In re Spader*, 66 B.R. 618, 620–22 (W.D.Mo.1986); *In re Larkins*, 50 B.R. 984, 987 (W.D.Ky.1985); *In re Dochniak*, 96 B.R. 100, 102 (Bankr.W.D.Ky.1988); *Arnold, supra*, 40 B.R. at 146–47; and *In re McSorley*, 24 B.R. 795, 797–99 (Bankr.D. N.J.1982).

We acknowledge some authority to the contrary, most examples of which we cited in *Ford, supra*, 84 B.R. at 44, *e.g., In re Seidel*, 752 F.2d 1382, 1384–87 (9th Cir. 1985); and *In re Palazzolo*, 55 B.R. 17, 18 (Bankr.E.D.N.Y.1985).[8] *See also In re Halley*, 70 B.R. 283, 285 (E.D.Pa.1987);[9] *In re Davis*, 91 B.R. 477, 478–79 (Bankr.N. D.Ill.1988);[10] and Annot., *Bankruptcy: Chapter 13 Plan Delaying Payment of Unaccelerated Matured Modification of Creditor's Rights Under 11 U.S.C. § 1322(b)(2)*, 91 A.L.R.FED. 512 (1989).[11] We conclude, however, that, in this district, we are bound by the holding in *Roach, supra*, 824 F.2d at 1376. Here, a cure of an obligation, like the instant one, which matures during the course of a Plan should surely not be deemed to present a "modification" prohibited by § 1322(b)(2).

As the interested party adversely affected by our unappealed decision in *Ford*, Mid–Penn was surely aware of *Ford*'s existence and the need to present us with strong arguments to cause us to reconsider our decision there. Suffice it to say that it has presented very little which we did not already consider in *Ford*. We therefore decline to change the reasoning expressed there. Consequently, we conclude that there is a third alternative reason why Mid–Penn cannot succeed here: § 1322(b)(2) does not preclude a "cure" (which is not a "modification") of an obligation secured by only real estate, and such a cure is expressly authorized by § 1322(b)(3).

G. SINCE OUR CONCLUSION MAY HAVE REASONABLY BEEN UNANTICIPATED BY MID–PENN IN FILING ITS PROOF OF CLAIM, WE SHALL ACCORD MID–PENN A BRIEF OPPORTUNITY TO FILE AN AMENDED PROOF OF CLAIM AND THE DEBTOR WITH A BRIEF OPPORTUNITY THEREAFTER TO OBJECT TO MID–PENN'S CLAIMS.

The Amended (and last filed) Proof of Claim by Mid–Penn, asserting $4,767.11 in arrearages and $5,415.00 in direct payments, *see* pages 397–98 & nn. 2 and 3 *supra*, obviously does not contemplate the Debtors' paying Mid–Penn's claim in full over the course of the Plan. It might be argued that, since that is what the Plan provides and such Plan provisions were deemed permissible in *Ford, supra*, this is what Mid–Penn should have anticipated and to what it should have responded in filing its proof of claim. However, our

---

**8.** *In re LaPaglia*, 8 B.R. 937 (Bankr.E.D.N.Y. 1981), also cited by Mid–Penn, was overruled by the decision in *Taddeo, supra*, 685 F.2d at 28.

**9.** Although this is a decision issued by our district court, we note that the ruling was issued on a number of grounds which would have justified the result irrespective of the applicability of § 1322(b)(2). Consequently, the discussion of § 1322(b)(2) included therein was superficial. Also, this decision preceded *Roach* and is, we submit, no longer good law in this Circuit.

**10.** This decision was also based upon § 1322(b)(5), 91 B.R. at 479–82, which is inapplicable here. *See* page 400 *supra*.

**11.** As its title indicates, this Annotation collects only cases where the obligation is entirely matured pre-petition *and* there has been no pre-petition acceleration by the creditor. Here, the obligation did *not* totally mature pre-petition and there *was* an acceleration. Nevertheless, the note concludes that "[a] split of authority exists" in cases presenting even this more questionable scenario. 91 A.L.R.FED. at 513.

examination of the Debtors' Budget, included in their Chapter 13 Statement, reflects the Debtors' own schizophrenic treatment of Mid–Penn's claim. Among the Debtors' alleged monthly expenditures in this Budget is a payment noted as "2nd mortgage-Mid–Penn" at $285 monthly. This entry suggests that the Debtors contemplated paying Mid–Penn its regular monthly payments outside of the Plan.[12]

Therefore, we shall allow Mid–Penn to file any further Amended Proof of Claim in a period of approximately ten (10) days following the filing of this Opinion. We shall also give the Debtors a similar period thereafter to object to any further Amended Proof of Claim or the current Amended Proof of Claim. Then, after another period of approximately 10 days, we shall reschedule the Debtors' confirmation hearing.

### H. CONCLUSION.

Our Order so providing will be entered.

### ORDER

AND NOW, this 19th day of October, 1989, after a colloquy with counsel for the parties at the Objection of Mid–Penn National Co. (hereinafter "Mid–Penn") to Confirmation of the Debtors' Chapter 13 Plan in open court on September 7, 1989, at which it was determined that Objections and certain documents would be considered and upon careful review of the parties' Briefs filed thereafter, it is hereby ORDERED AND DECREED as follows:

1. In light of the Conclusions expressed in the foregoing Opinion, Mid–Penn is accorded the opportunity to file a further Amended Proof of Claim not inconsistent with this Opinion on or before October 31, 1989.

2. In the same light, the Debtors are accorded the opportunity to file any Objections to any further Amended Proof of

Claim or the present Amended Proof of Claim of Mid–Penn on or before November 9, 1989.

3. A *Final* Confirmation Hearing is scheduled in this case on

TUESDAY, NOVEMBER 21, 1989, at 10:00 A.M. in Courtroom No. 2 (Room 3718), United States Court House, 601 Market Street, Philadelphia, PA 19106.

---

**12.** Unless they had another loan from Mid–Penn which is not mentioned by either party, this entry also casts doubt on whether the Debtors have met the requirement of providing that all of their disposable income is paid into the Plan, as contemplated by 11 U.S.C. § 1325(b)(1)(B). The "expenditures" in the Budget, unless another loan exists, obviously include the payment of a sizable sum which the Debtors are not actually paying. Of course, such an objection would have to be raised in timely fashion by the Trustee or an unsecured creditor, not by Mid–Penn or this court *sua sponte*, to preclude confirmation.