**In re Rudolf WILLIAMS a/k/a Rudi J. Williams and Sharlon C. Williams, Debtors.**

**Bankruptcy No. 889-90438-478.**

United States Bankruptcy Court, E.D. New York, at Westbury.

Dec. 21, 1989.

Fishoff & Gelberg, by Gary Fishoff, Garden City, N.Y., for debtors.

Harold Sussman, by Amy Sussman, Garden City, N.Y., for Secured Creditor Anna Braun.

## MEMORANDUM DECISION AND ORDER ON MOTION TO VACATE STAY AND DENY CONFIRMATION OF THE DEBTORS' PLAN

DOROTHY EISENBERG, Bankruptcy Judge.

### FACTS

Rudolph and Sharlon Williams ("Debtors") are wage earners who reside at 40 State Street, Wyandanch, New York, their principal residence. They filed a Petition for relief pursuant to Chapter 13 of the Bankruptcy Code on April 7, 1989.

On August 13, 1987, the debtors borrowed the sum of $15,000 from Anna Braun ("Braun") and as collateral for the loan executed a second mortgage and mortgage note on their residence. Pursuant to the terms of the note and mortgage the debtors were to make monthly installment payments of interest only at the rate of sixteen percent per annum for one year when the entire principal balance of $15,000 was due and payable in one "balloon" payment.

The Debtors primary purpose in borrowing the funds from Braun was to cure an existing default to the first mortgagee on their residence. The arrears at that time were only $2,224.93. However, the debtors

were required to borrow an additional $4,697.00 to satisfy an existing second mortgage and an additional $5,000.00 in closing costs and broker's fee. In total it cost the debtors approximately $8,000.00 in additional debt to cure approximately $2,200 in arrears to the first mortgagee.

The Debtors' failed to make the monthly installment due January, 1988 and failed to make the balloon payment when it became due by its own terms on August 13, 1988. Braun commenced a foreclosure proceeding in the New York State Supreme Court, Suffolk County. A Judgment of Foreclosure and Sale was entered on February 17, 1989, in the approximate sum of $19,001.50, with interest payable from the date of the referee's report at the rate of sixteen percent per annum. The judgment included an award of costs and certain legal fees in the amount of $1,295.00.[1] As of the date of the filing of the Petition, the Debtors owed Braun $19,774.50. A foreclosure sale of the property was scheduled for April 12, 1989 which was automatically stayed by the filing of the Debtor's chapter 13 petition.

The Petition and Schedules filed by the Debtors reveal that the Debtors own their home and principal residence as tenants by the entirety. The real property has a market value of $80,000.00 and is encumbered by a long-term first mortgage upon which is owed approximately $31,000.00, and a second mortgage held by Braun who is owed approximately $22,000.00 [2]. There is no question that there is substantial equity in the realty over and above the secured claims. In addition, the Debtors have two (2) unsecured creditors for a total of approximately $1,500.00.

The Debtors have filed an amended sixty (60) month Plan wherein they propose to pay $425.00 a month for the first twenty-four (24) months and $533.00 a month for the remaining thirty-six (36) months. The Plan provides for the holders of allowed secured claims to retain the liens secur-ing their claims and to pay to the first mortgagee current monthly payments outside of the Plan (Debtors claim 1st mortgage is current). The Plan further provides for payment to Braun, the second mortgagee, of one hundred percent (100%) of the judgment amount, together with the judgment interest and late charges to the date of the filing of the Petition, plus ten percent (10%) interest over the life of the Plan for a total payout of $25,262.48, representing a one hundred (100%) percent payment to Braun and a one hundred (100%) percent payment to all other allowed claims.

Braun objects to confirmation of the Plan and seeks relief from the automatic stay pursuant to Section 362(d) of the Bankruptcy Code to enable her to proceed to collect on her judgment of foreclosure and sale. The primary basis of Braun's objection is that pursuant to Section 1322(b)(2) and (5) the plan as proposed is an impermissible modification of her rights as a holder of a fully matured balloon mortgage on the Debtors' principal residence and therefore this debt cannot be included in the Debtors' Chapter 13 Plan.

Braun asserts additional objections based on the plan's failure to include a legal fee award pursuant to the terms of the judgment and the mortgage and its failure to provide for interest at the rate of sixteen percent per annum from the date of the Referee's report until the mortgage is satisfied as provided for in the mortgage and in the judgment of foreclosure and sale.

Without addressing at this time the issue of the exact amount of the mortgagees' pre-petition claim and what interest on that debt would be appropriate and would equal present value, (all matters which could be dealt with at a latter hearing and appropriate amendment to the Plan by the Debtors), this Court is being asked to decide: (a) whether pursuant to Section 1322(b) the debtors may use a Chapter 13 Plan to cure a default of non-payment of a short-term

---

1. Braun claims additional legal fees were yet to be fixed by the State Court pursuant to the terms of the mortgage and judgment.

2. The actual amount of the judgment, plus costs and legal fees known as of the date of the filing of the Petition is less than the original amount scheduled, but additional amounts may be due.

balloon mortgage secured by the Debtors' principal residence which has fully matured by its own terms prior to the filing of the debtor's bankruptcy petition; and (b) whether Braun is entitled to relief from the automatic stay.

Braun argues that because the mortgage at issue was a one-year balloon mortgage which had matured by its own terms prior to the filing of the bankruptcy petition, it is not subject to cure, and any plan that provides for repayment of this mortgage over any period of time is a modification of the mortgagee's rights and therefore impermissible pursuant to Section 1322(b)(2). In support, Braun argues that the Debtor's proposed plan intending to pay the mortgage over a five (5) year period effectively changes the terms of the mortgage from a one (1) year repayment to a six (6) year repayment which is a modification of her rights. In short, she urges that because of the express language in Section 1322(b)(2), any proposed cure or modification short of immediate full payment is an improper modification of her rights.

Counsel for the Debtors argue that because Braun's mortgage has been reduced to judgment and the plan proposes to pay the entire judgment amount (the pre-petition claim) plus present value interest it is not an impermissible modification of this creditor's rights pursuant to section 1322(b)(2) and (5); and, that the Debtors have the right to "cure" and "waive" their default pursuant to Section 1322(b)(3) of the Bankruptcy Code. Alternatively, Debtor's counsel argues that Braun is also secured by a security interest in the Debtor's personal property and therefore does not hold a claim secured *only* by a security interest in real property.[3]

■ Debtors' alternative argument that Braun is secured by a security interest in Debtors' personalty pursuant to the terms of the mortgage is not persuasive. The reference in the mortgage to a security interest in Debtors' refrigerator and win-

dow shades, in addition to other normally accepted realty fixtures, is so nominal in value as to have no significant meaning and should not have any effect in this case. Braun is a secured creditor secured only by a mortgage and judgment lien against the real property of the Debtors which is Debtors' principal residence, and does not have any additional collateral for its claim.

In spite of the meritless alternative argument, it is the decision of this Court that the Debtors may use a Chapter 13 Plan to cure a default of non-payment of a short term balloon mortgage secured only by the Debtors' principal residence which has fully matured by its own terms prior to the filing of the Debtors' bankruptcy petition, provided that the creditor receives nothing less than full payment over the life of the Plan.

## DISCUSSION

■ The particular statute at issue is Section 1322(b) of the Bankruptcy Code which provides in pertinent part as follows:

(b) ... the plan may

(2) modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence,* or of holders of unsecured claims;

(3) provide for the curing or waiving of any default;

.    .    .    .    .

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

11 U.S.C. § 1322(b)(1982). (Emphasis added).

A review of the case law reveals that this particular issue has not been addressed by

---

**3.** Debtors' counsel also argues that because Braun has reduced her claim to a judgment of foreclosure and sale, she is no longer secured only by a security interest in real property.

This need not be addressed since the Court's decision would not be different if no judgment of foreclosure had been entered.

the Second Circuit. However, the particular issues raised in this case have been addressed and decided by the Fifth and the Ninth Circuit, each of which have reached opposite conclusions.

The only Second Circuit decision which provides any guidance for the Court today is *In re Taddeo,* 685 F.2d 24 (2d Cir.1982). In *Taddeo,* the debtor defaulted on a long-term mortgage note which had been accelerated to a demand for full payment prior to the filing of the petition. The mortgagee claimed that pursuant to Section 1322(b), the plan could not be confirmed because the note came due before the last payment under the plan was due and because she accelerated the mortgage, all payments were due. *Id.* at 28. The Second Circuit held that Chapter 13 permitted debtors to cure defaults on their home mortgage and return to monthly payments despite the acceleration of the entire debt by the mortgagee and that this de-acceleration was not a modification under Section 1322(b)(2). *Id.* at 27–28. The Court reasoned that "[w]hen Congress empowered chapter 13 debtors to 'cure defaults,' we think Congress intended to allow mortgagors to de-accelerate their mortgage and reinstate its original payment schedule." *Id.* at 27.

The Second Circuit reviewed the legislative history and policy considerations of Chapter 13 as a whole in great depth and concluded that the power to cure is different from the power to modify and that the power to "cure any default" in Sections 1322(b)(3) and 1322(b)(5) is not limited by the ban against "modifying" a mortgage in Section 1322(b)(2). *Id.* at 27. *See Grubbs v. Houston First American Savings Bank Association,* 730 F.2d 236, 246 (5th Cir. 1984). The Court pointed out that modifying a claim either by reducing payments or payment of less than the full amount of the debt was different from curing a default and maintaining payments which repay the debt in full over the term of the Plan. The Court further pointed out that Section 1322(b)(5) requiring the Debtor to cure within a "reasonable time" refers to the debtor's being given an opportunity to cure their default "within a reasonable time"

after a Chapter 13 petition is filed. *In re Taddeo,* 685 F.2d at 29.

This Court believes that the *Taddeo* decision provides the logical basis for its decision and is more persuasive than any strict construction interpretation of the contorted language in Section 1332(b)(2). Of the two (2) Circuit Court decisions that address the issue in this case, the Fifth Circuit Court of Appeals, sitting *en banc,* in *Grubbs v. Houston First American Savings Bank Association,* 730 F.2d 236 (5th Cir.1984), reached the same conclusion as this Court by extending the reasoning of *Taddeo.*

In *Grubbs,* the debtor borrowed money by way of a three (3) year balloon mortgage secured by a second lien on his principal residence. The Debtor defaulted and the lender accelerated the full balance of the note which, by its own terms, was payable in full prior to the filing of the Chapter 13 petition. In his Chapter 13 Plan, the debtor proposed to pay off all delinquent and matured amounts through thirty-six (36) monthly installments. The court, after an extensive examination of the legislative history of Section 1322(b), held quite clearly that, "Section 1322(b) of the Bankruptcy Code, construed in light of its legislative history and of its context within Chapter 13 as a whole, evinces no legislative intent that a home mortgagor debtor is barred either (a) from curing a pre-petition acceleration into maturity of the unpaid installments due upon his home mortgage, or (b) from proposing (in his Chapter 13 Plan for consideration by the bankruptcy court) that *all past due or matured amounts* secured by his home mortgage be paid during the term of his plan." *Grubbs,* 730 F.2d at 237. (Emphasis added).

Braun relies on the Ninth Circuit case of *In re Seidel,* 752 F.2d 1382 (9th Cir.1985) and *In re Palazzolo,* 55 B.R. 17 (Bankr.E. D.N.Y.1985). Each case involved a short-term balloon mortgage that matured prior to the filing of the bankruptcy petition. Both hold that where a debt consisting of a security interest in the real property that is the debtor's principal residence has matured by its own terms prior to the filing of

the Chapter 13 petition, it is impermissible for the Debtors to extend the repayment through their Plan as this would constitute a modification of the secured creditor's claim. *Seidel* and *Palazzolo*, using a strict interpretation of the statute, reason that any attempt to delay payment on an already mature debt is an alteration of the due date of the mortgage and as such, is an impermissible "modification" under Section 1322(b)(2) of the Bankruptcy Code. *In re Seidel*, 752 F.2d at 1383; *In re Palazzolo*, 55 B.R. at 18. The *Seidel* Court noted that the "plain meaning" rule suggests that Congress intended a broad natural meaning for the word "modify" and therefore any alteration or modification of the secured creditor's contract falls within the exception provided by Congress to this special class of "homelenders." It further noted that Congress gave special protection to home mortgage lenders for performing a valuable social service for their loan. *In re Seidel*, 752 F.2d at 1386.

This Court disagrees with the Ninth Circuit Decision in *Seidel* for two reasons: (1) The decision creates an unnecessary distinction between the curing of an accelerated mortgage and prohibiting the curing of a mortgage that has matured by its own terms, and (2) the decision adopts an overly restrictive view of the Debtor's right to cure not intended by the legislative history and intent of Chapter 13.

■ The *Seidel* Court distinguished *Grubbs* and *Taddeo* which allowed the curing of mortgages that had been accelerated by the lenders from the case where the debt had matured by its own terms through the passage of time. *In re Seidel*, 752 F.2d at 1383. This Court believes that such a conclusion creates an incorrect technical distinction. Whether a debt becomes due and payable by the action of the lender or by its own terms through the passage of time, the result is exactly the same. In both instances, the entire debt is due and payable and consequently, they should be treated the same. *See In re Spader*, 66 B.R. 618, 622 (W.D.Mo.1986); *In re Larkins*, 50 B.R. 984, 987 (W.D.Ky.1985); *but see In re Cooper*, 98 B.R. 294, 296 (Bankr.

W.D.Mich.1989); *In re Davis*, 91 B.R. 477, 481 (Bankr.N.D.Ill.1988).

The *Seidel* Court when addressing the issue of a debtor's right to "cure" confined itself to the context of de-accelerating a mortgage. *In re Seidel*, 752 F.2d at 1386. The Court reasoned that in a case where the debt had already matured pre-petition, there could be no de-acceleration and therefore cure and waiver were not available to the debtors except by immediate payment.

■ This Court believes that the Bankruptcy Court intended to give cure and waiver a much broader meaning and should not be limited to the context of de-acceleration of mortgage payments as the *Seidel* Court does. The Second Circuit in *Taddeo* stated that "the power to 'cure any default' ... is not limited by the ban against 'modifying' a mortgage in 1322(b)(2)." *Taddeo*, 685 F.2d at 27. Consequently, a debtor's right to cure should be interpreted so as to permit the debtor to use any method otherwise available to him to make the creditor whole, while at the same time, protect his assets. Accordingly, this Court believes that if a debtor's plan provides for payments with interest, the present value of which equals the full amount of the judgment plus interest and costs, the mortgagee is receiving exactly that which he would receive if the mortgagor debtor were to tender full payment and therefore is not a modification of a creditor's rights, but is a cure of the debtor's default pursuant to Section 1322(b)(3). *In re Larkins*, 50 B.R. at 987; *In re Spader*, 66 B.R. at 622; *In re Minick*, 63 B.R. 440, 445 (Bankr.D.C.1986); *In re McSorley*, 24 B.R. 795, 798 (Bankr.N.J.1982).

Any provision of Chapter 13 must be construed consistent with the overall rehabilitative purpose behind its enactment. *See In re Taddeo*, 685 F.2d at 29. The purpose behind Chapter 13, as explained in the legislative history, is:

> To enable an individual, under court supervision and protection, to develop and perform under a plan for the repayment of his debts over an extended period ... The benefit to the debtor of developing a plan of repayment under Chapter 13,

rather than opting for liquidation under Chapter 7, is that it permits the debtor to protect his assets ... Under Chapter 13, the debtor may retain his property by agreeing to repay his creditors.

H.R.Rep. No. 595, 95th Cong. 1st Sess. 118, *reprinted in*, 1978, *U.S.Code Cong. & Admin.News,* 5787, 6079.

To read Section 1322(b)(2) as Braun would have us do, would effectively bar any otherwise qualified Chapter 13 debtor from the relief intended by Chapter 13 in general. To insist on immediate repayment in full of the entire debt due to a secured creditor on a matured pre-petition debt would result in a forced liquidation sale of the debtor's home. This is not what was intended by the authors of Chapter 13 when read in its entirety and conflicts with the general legislative intent upon which Chapter 13 is based. *See In re Taddeo,* 685 F.2d at 29; *In re Larkins,* 50 B.R. at 987; *In re Minick,* 63 B.R. at 445; *In re McSorley,* 24 B.R. at 798; *see also* H.R. Rep. No. 595, 95th Cong. 1st Sess. 118, *reprinted in,* 1978 U.S.Code Cong. & Admin.News 5787.

■ A close look at the specific exception of Section 1322(b)(2) and its legislative history and intent indicates that there is little legislative history available. However, what does exist appears to indicate that by placing the particular language into Section 1322(b)(2) which provides for the exception of modification of claims secured only by an interest in the debtor's principal residence, Congress intended to protect only the long-term residential home market financing industry. *In re Shaffer,* 84 B.R. 63, 65 (Bankr.W.D.Va.1988); *In re Morphis,* 30 B.R. 589, 592 (Bankr.N.D.Ala. 1983); *United Companies Financing Corp. v. Brantley,* 6 B.R. 178, 189 (Bankr. N.D.Fla.1980); *but see In re Harris,* 94 B.R. 832 (D.N.J.1989); *In re Simpkins,* 16 B.R. 956, 966 (Bankr.E.D.Tenn.1982). Even the *Seidel* Court stated that Section 1322(b)(2) shows a deliberate intention by Congress to insulate a certain subset of creditors. *Seidel,* 752 F.2d at 1386. This Court concurs with the cases that hold that the true congressional intent behind the Section 1322(b)(2) exception for claims secured only by an interest in the debtor's principal residence is to protect the traditional mortgage lender who provides long-term financing that enables individuals to purchase their home and that Congress did not intend to provide this same exceptional protection to lenders who provide short-term consumer financing to individuals and take a junior lien on their home as collateral. *See In re Shaffer,* 84 B.R. at 66–67; *In re Morphis,* 30 B.R. at 593.

In recent times, the rise in the average price of a home has increased dramatically leaving many individuals with a considerable equity cushion in their homes. Many lenders have developed creative financing devices which encourage individual homeowners to borrow funds using this new found equity as collateral without inquiry as to their ability to repay. These are not the same lenders that provide stability to the housing market by providing a home buyer with the initial financing that allows him to purchase his home. These are lenders that make financing available to individual that may be financially unstable and a high risk, at a high rate of interest, while taking a secured interest in the individuals' home to insure the repayment of the debt. This Court does not believe that they were intended to receive any special benefit from Section 1322(b)(2) and payment in full over the life of the Plan is all they are entitled to. *In re Shaffer,* 84 B.R. at 67; *In re Morphis,* 30 B.R. at 593.

## SUMMARY

This Court holds that a Chapter 13 Plan which proposes to pay to a non-purchase money secured creditor who has a pre-petition judgment of foreclosure and sale on the Debtors' principal residence, the full present value of the debt over five (5) years is a cure of the debtor's default under Section 1322(b)(3) and not a modification of the secured creditor's rights under Section 1322(b)(2) and (b)(5) which would prevent confirmation of Debtors' Plan.

## DECISION

Accordingly, the creditor's motion to vacate the stay is denied. This Court finds

that Braun is adequately protected by the value of the real property which has an equity cushion sufficient to enable the creditor to receive payment of its debt in full, together with interest pursuant to Section 506 of the Bankruptcy Code and that the real property is necessary for the Debtors' confirmation. Braun's objection to confirmation is denied.[4]

It is so ordered.

---

**4.** The Debtors indicate their intent to pay the full debt at present value interest over five (5) years. Any question as to the actual amount of the debt and what the interest rate should be to equal present value if not agreed to by the parties may be decided at a later date after a hearing by the Court. The Debtors will have the right to amend the Plan to conform to Debtors' intent to pay the full amount of Braun's claim within sixty (60) months, and if the Plan otherwise complies with the Bankruptcy Code, it will be confirmed.