**In re Jorge LA BRADA, Debtor.**

**Bankruptcy No. 191–13738–260.**

United States Bankruptcy Court,
E.D. New York.

Oct. 10, 1991.

Arthur Morrison, New York City, for debtor.

Zavatsky & Mendelsohn, Syosset, N.Y., by Allan B. Mendel Sohn, for Alexander J. Varveris, movant.

Stuart P. Gelberg, Garden City, N.Y., Trustee.

Lisa R. Pepper, South Brunswick, N.J., for Federal Deposit Ins. Corp.

## CORRECTED DECISION ON MOTION TO MODIFY THE AUTOMATIC STAY

CONRAD B. DUBERSTEIN, Chief Judge.

This matter comes before this court on the motion of Alexander J. Varveris (the "Movant") who seeks the termination of the automatic stay pursuant to 362(d)(1) so that he may continue his action to foreclose his mortgage (the "Mortgage") on property located at 64–05 215th Street, Bayside New York (the "Property"). That action is now

pending in the Supreme Court State of New York, County of Queens (the "State Court"). For the reasons stated below, the motion is granted.

## FACTS

Jorge La Brada (the "Debtor") filed his petition for relief under Chapter 13 of the Bankruptcy Code (the "Code") on June 10, 1991. Shortly thereafter the Movant made the instant motion to lift the automatic stay so that he may continue in the State Court to foreclose the Mortgage on the Property. The Property functions as the Debtor's primary residence. The motion also requests this Court to award the Movant reasonable counsel fees and costs.

The Movant holds a mortgage dated November 28, 1988, in the face amount of $18,000. The Mortgage is subordinate to a first mortgage (the "First Mortgage") on the property held by the Federal Deposit Insurance Company (the "FDIC") as assignee of Capitol National Bank. The First Mortgage is for the principal sum of $210,-000 which together with interest amounts to about $283,000. The FDIC and the Movant are the only secured creditors listed in the Debtor's schedules. There is only one unsecured creditor listed in the Debtor's schedules for $1938.66. Under the terms of the Mortgage the Debtor was to make payments of interest only for one year, the principal to be paid in one balloon payment at the end of that year. The Mortgage matured by its own terms on December 1, 1989.

As a result of the Debtor's default on the payments, the Movant commenced an ac-tion in State Court to foreclose the Mortgage. A Judgment of Foreclosure and Sale was awarded the Movant by the State Court on March 28, 1991 for $24,000 inclusive of interest and charges.

## ARGUMENTS OF THE PARTIES

The Movant argues that pursuant to § 362(d)(1) of the Code, the automatic stay may be lifted for cause and in this case there is cause to lift the stay since the Debtor is financially unable to propose a plan that adequately deals with the indebtedness owed the Movant. The Movant notes that the Mortgage fully matured by its terms prior to the Debtor filing his petition for relief. He further argues that inasmuch as the Movant is secured only by the Mortgage on the Debtor's principal residence, section 1322(b)(2)[1] prohibits the Debtor from modifying the rights of the Movant. Therefore the Debtor is not free to extend the maturity date on the Mortgage and pay the indebtedness over the course of a Chapter 13 plan. As the Debtor is incapable of proposing a plan dealing with the indebtedness, there is cause to lift the automatic stay and the Movant should be allowed to continue his foreclosure action in the State Court.

The Debtor makes no representation that he can cure the default on the Mortgage within a reasonable time. Rather, the Debtor argues that pursuant to § 1322(b)(3) he should be allowed to cure his default on the Mortgage with payments under a Chapter 13 plan. To date there is no plan filed with this Court.

---

**1.** Section 1322(b) states in pertinent part:
(b) Subject to subsections (a) and (c) of this section, the plan may—
    *    *    *    *    *    *
(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;
(3) provide for the curing or waiving of any default;
    *    *    *    *    *    *
(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any de-fault within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

The Debtor alternatively argues that the Mortgage is invalid on its face. He asserts that he only borrowed $15,000.00 from the Movant and that the Movant took advantage of the Debtor's need for money by adding $3,000 to the face amount of the loan. Furthermore, he alleges that interest was charged on the full $18,000 face amount of the loan even though the Debtor only actually received $15,000 from the Movant.

## DISCUSSION

■ The first issue is whether the Debtor may propose a Chapter 13 plan which provides for the payment of the Mortgage notwithstanding the fact that the Mortgage matured prior to the filing of the petition for relief.

The Debtor correctly notes that § 1322(b)(3) allows a debtor to cure a default on a secured claim through payments under a Chapter 13 plan. However that right is qualified in two ways. Section 1322(b)(5) states that the Chapter 13 plan may not provide for the curing of a default "on a secured claim on which the last payment is due after the date on which the final payment under the plan is due." In this case the final payment under the Mortgage was due before the petition for relief was even filed. The second limitation on a debtor's ability to cure a default under a Chapter 13 plan is § 1322(b)(2) which prohibits a debtor from modifying the rights of a holder of a claim "secured only by a security interest in real property that is the debtor's principal residence." In this case, the Movant's only security is its Mortgage on the Debtor's principal residence.

The Debtor cites the cases of *In re Taddeo*, 685 F.2d 24 (2d Cir.1982), and *In re Glenn*, 760 F.2d 1428 (6th Cir.), *cert. denied sub nom. Miller v. First Federal of Michigan*, 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985), to support its proposition that he should be allowed to pay down the Mortgage over a period of time notwithstanding the fact that the Mortgage is a one year, balloon payment mortgage that has already matured. *In re Taddeo* stands for the proposition that despite the fact that a mortgage has been accelerated due to a Debtor's pre-petition default, a Chapter 13 debtor may decelerate the mortgage, and cure the pre-petition defaults over the life of the Chapter 13 plan. *In re Glenn* holds that a debtor has the right to decelerate a mortgage after a judgment of foreclosure has been entered provided no foreclosure sale has taken place. The Fifth Circuit case of *Grubbs v. Houston First American Savings Ass'n.*, 730 F.2d 236 (5th Cir.1984), not cited by the Debtor, not only holds that a Chapter 13 debtor may decelerate a mortgage and cure the default under the plan but may do so notwithstanding the fact that the final payment on the mortgage, under the nonaccelerated terms would come due within the term of the proposed Chapter 13 plan.

None of the above cited cases hold that a debtor has the right to pay a mortgage through a Chapter 13 plan where the mortgage became due before the debtor filed a petition for relief.

*In Re Williams*, 109 B.R. 36 (Bankr. E.D.N.Y.1989), is a case directly on point. That case holds that a debtor may pay a short term "balloon" mortgage through Chapter 13 Plan payments notwithstanding the fact that the mortgage, by its terms, matured prior to the filing of the petition for relief. Judge Eisenberg concluded that allowing a debtor to propose such a Chapter 13 plan was not an impermissible modification of the mortgagee's rights but merely a cure of a default allowable pursuant to § 1322(b)(3). She reasoned:

[A] debtor's right to cure should be interpreted so as to permit the debtor to use any method otherwise available to him to make the creditor whole, while at the same time protect his assets. Accordingly, this Court believes that if a debtor's plan provides for payments with interest, the present value of which equals the full amount of the judgment plus interest and costs, the mortgagee is receiving exactly that which he would receive if the mortgagor debtor were to tender full payment and therefore is not a modification of a creditor's rights, but is a cure of

the debtor's default pursuant to 1322(b)(3).

*Williams,* 109 B.R. at 41 (citations omitted).

Judge Eisenberg continued by stating that "[a]ny provision of Chapter 13 must be construed consistently with the overall rehabilitative purpose behind its enactment," namely to enable a debtor to propose a plan for the repayment of his debts and protect his assets. *Id.* The *Williams* decision also notes that although § 1322(b)(2) shows an intent by Congress to protect those creditors secured only by an interest in the debtor's primary residence, that protection should not be extended to those lenders who provide short-term consumer financing to individuals and take a junior lien on their home as collateral.

Other courts have held that a Chapter 13 plan which provides for the payment of a fully matured balloon mortgage over the life of the plan constitutes an impermissible modification of the creditor's rights under a mortgage. *See In re Seidel,* 752 F.2d 1382 (9th Cir.1985); *In re Lumsden,* 112 B.R. 978 (Bankr.W.D.Mo.1990); *In re Bosteder,* 59 B.R. 878 (Bankr.S.D.Ohio 1986); *In re Palazzolo,* 55 B.R. 17 (Bankr. E.D.N.Y.1985).

The Ninth Circuit in *In re Seidel,* 752 F.2d 1382 (9th Cir.1985) held that a Chapter 13 plan which proposed to pay off a note secured by a mortgage on the debtor's home which had reached its due date before the debtor filed for bankruptcy was an improper modification of that creditor's rights.

In *Seidel* the debtors purchased a home. A promissory note secured by a mortgage was given in partial payment. The note provided for payments of interest only for a period of three years at which time the principal would come due and owing. The purchasers defaulted when the principal came due and the sellers commenced foreclosure proceedings. Prior to final judgment of foreclosure and sale, the purchasers filed a Chapter 13 petition and plan. Under the plan the purchasers proposed to pay the debt then in default in sixty month-ly installments culminating in a final balloon payment of $4,000.

The Ninth Circuit affirmed the lower courts and refused to confirm the debtors' plan. In doing so the Court noted that their is a difference between the permissible act of curing a default and the impermissible act of modifying the rights of a claimant whose only security is an interest in a debtor's principal residence.

*Seidel* recognized that there are cases that hold that a plan that extends the time for payment beyond the time originally contemplated by the creditor is not a modification of the mortgage so long as a creditor receives regular payments and ultimately receives 100 percent of what he is due plus accruing interest up until the time of payment. However, the Ninth Circuit, after considering the plain meaning and legislative history of the statute, rejected that view.

The Court in *Seidel* found that postponing payment of a debt beyond the time originally contemplated by the parties to the contract, "clearly amounts to a unilateral 'modification' of the original debt contract, as that word is ordinarily used." *Seidel* 752 F.2d at 1384. Hence a plan that extends the time to repay a mortgage that came due by its terms prior to the debtor's filing its petition is contrary to the plain meaning of the statute.

That Court also found that the legislative history was not persuasive in overcoming the plain meaning of § 1322(b)(2). Furthermore, the *Seidel* Court noted that there is a countervailing policy of protecting certain lenders which can also be found in the legislative history to § 1322(b)(2).

In the specific context of subsection b(2), an amendment was added to protect home lenders, rather than home owners, by prohibiting home owners from modifying debts wholly secured by home mortgages (citations omitted). This deliberate alteration of the statute's general protection of the debtor is a more precise barometer of congressional intent in this particular context. It indicates here that a debtor should not be able to use section 1322(b) to delay payment of a

debt which has already come naturally due.

*Seidel,* 752 F.2d at 1385.

The *Seidel* Court distinguished cases like *Taddeo* and *Grubbs,* in which a debtor proposed a plan to decelerate a note and mortgage and pay the arrearage through a Chapter 13 plan. The Court stated:

> The decisions rely on the fact that "the plain meaning of 'cure,' as used in § 1322(b)(3) and (5), is to remedy or rectify the default and restore matters to the *status quo ante." In re Clark,* 738 F.2d 869, 874 (7th Cir.1984); *Taddeo,* 685 F.2d at 26–27. When a debt has been accelerated, "cure" therefore results in the reinstatement of the original payment terms of the debt. But when a debt has already naturally matured—as in Seidel's case—"cure" as defined by these courts cannot aid the debtor, since reinstatement of the original terms of the debt will merely make the debt immediately due and payable (citations omitted). The cure provisions discussed in decisions of other circuits are of no relevance where Seidel is seeking to delay payments on a debt that is immediately due and payable.

*Seidel,* 752 F.2d at 1386.

This Court agrees with those cases, including *Seidel,* which hold that a Chapter 13 plan which provides for the payment of a short term balloon mortgage on the debtor's primary residence that has already matured is an improper modification of a secured claim and contrary to the express language of § 1322(b)(2) and (5).

Although the view asserted in *Williams* and other cases, that the debtor may proposes such a plan as long as the creditor receives the full amount of its claim plus interest is appealing, there is no getting around the fact that such an act is a unilateral modification of the terms of the Mortgage and as such is prohibited by the unambiguous language of § 1322(b)(2) and (5).

■ The second issue this Court must decide is whether this Court should forebear in lifting the automatic stay due to the Debtor's allegations that the Mortgage is invalid in that it was procured through fraud.

In the recent case of *In re Bocker,* 123 B.R. 164 (E.D.N.Y.1991), the Court was faced with a similar issue. In that case Bocker borrowed $20,000.00. In connection with the loan, she executed a bond and mortgage. After Bocker defaulted, the lender commenced a foreclosure action against her on the bond and mortgage. Subsequently a judgment of foreclosure and sale was entered on default. Bocker then filed a petition for relief under Chapter 13 of the Code. In that case, the lender filed a claim in the amount of the judgment, $24,498.83. Bocker commenced an adversary proceeding objecting to the claim. The objection was based on the grounds that the interest charged on the loan was usurious and hence according to New York law, the bond was void as a matter of law.

The District Court affirmed Judge Goetz's decision to grant the lender's motion dismissing the adversary proceeding. The District Court recognized the generally accepted principal that:

> [A] bankruptcy court is bound to give preclusive effect to state court judgments to the same extent that the court of the state would do so.... [A]nd a bankruptcy court could "look beyond a state court default judgment[,] where the judgment was procured by collusion or fraud, ... or where the rendering court lacked jurisdiction."

*Bocker,* 123 B.R. at 165 (quoting *Kelleran v. Adrijevic,* 825 F.2d 692, 694 (2d Cir. 1987), *cert. denied* 484 U.S. 1007, 108 S.Ct. 701, 98 L.Ed.2d 652 (1988)).

In the instant case the Debtor only alleges that the Mortgage and not the judgment was procured through fraud or duress. Also, there is no allegation that the State Court which rendered the judgment lacked jurisdiction. Furthermore, the Debtor has not alleged that he was denied an opportunity for a full and fair hearing. Therefore this Court is not empowered to avoid the State Court judgment.

The third and final issue this Court must decide is whether there is cause to lift the automatic stay so that the Movant may continue the foreclosure action pending in State Court.

In this case the Debtor offers no hope or ability to cure the default on the Mortgage within a reasonable time, nor is the Debtor permitted to cure the default over the life of the plan. Under these circumstances, the Movant has shown cause for lifting the automatic stay. *See In re Sennhenn,* 80 B.R. 89 (Bankr.N.D.Ohio 1987); *In re Williams,* 68 B.R. 442 (Bankr.M.D.Ga. 1987).

### CONCLUSIONS

1. The Court has jurisdiction to hear and determine this contested matter pursuant 28 U.S.C. § 1334, 28 U.S.C. § 157(a) and (b)(1). The instant motion to lift the stay is a core proceeding pursuant to § 157(b)(2)(G).

2. The automatic stay is modified to allow the Movant to continue with the action pending in State Court to foreclose the Mortgage on the Property.

3. SETTLE ORDER consistent with this opinion.