**In re David Andy HARRIS, Debtor.**

**In re William OLER, Debtor.**

**In re Richard LARKIN, Debtor.**

**Bankruptcy Nos. 92–11675, 92–11893, 92–12044.**

United States Bankruptcy Court, N.D. Ohio.

Oct. 27, 1992.

David H. Drucker, Cleveland, Ohio, for debtor.

Ezio A. Listati, Porter, Wright, Morris & Arthur, Cleveland, Ohio, for mortgagee, Plymouth Capital Co., Inc.

## MEMORANDUM OF DECISION

DAVID F. SNOW, Bankruptcy Judge.

In these cases the debtors' mortgagees object to chapter 13 plans which provide for installment payments of mortgage loans after the mortgages mature by their terms without acceleration. In each case the mortgagee asserts that the plan violates section 1322(b)(2) of the Bankruptcy Code which precludes modification of rights secured only by security interests in real property that is the debtor's principal residence. The cases are discussed together since the issue is essentially the same in each case although the circumstances are somewhat different.

The Court has jurisdiction in these cases under 28 U.S.C. § 1334 and General Orders of the United District Court for the Northern District of Ohio. These objections to confirmation are core proceedings under 28 U.S.C. § 157(b)(2)(L).

### Background

In June 1989 David and Lou Ann Harris obtained a construction loan in the amount of $52,300 from Plymouth Capital Co. to build a home on property they owned. The note evidencing the loan was secured by a mortgage on the property which required the Harrises to make principal and interest payments for about three years and provided for a balloon payment of the outstanding balance on June 20, 1992. After the Harrises moved into their home, Mr. Harris developed a rare eye disease and was unable to work for a time. Plymouth obtained a judgment in foreclosure of the mortgage and Mr. Harris filed this chapter 13 case on March 20, 1992, proposing to pay Plymouth the outstanding balance of $47,406.14 plus interest over sixty months.

In August 1983 Alan and Karen Wilber sold a home located at 1104 Royal Oak Drive, South Russell, Ohio to William and Mary Ann Oler. As part of the transaction, the Wilbers agreed to accept a $30,000 second mortgage on the residence which was to be repaid in monthly principal and interest installments of $241.39 and a balloon payment of the balance on October 1, 1988. The debt was not paid off when due and the Wilbers obtained a foreclosure judgment against the Olers in the amount of $33,468.99 plus interest. Mr. Oler filed this chapter 13 case on March 31, 1992, prior to the foreclosure sale and proposes in his plan to pay the Wilbers over the term of his sixty-month plan.

In Richard Larkins' case his mortgage debt to Greater New York Savings Bank will mature in April 1995. The debt was contracted in April 1965. Mr. Larkin proposes to make the regular installment payments under the mortgage outside the plan until April 1, 1995, while paying the arrearages over sixty months. Although regular payments will cease as scheduled in the mortgage, under the proposed plan the payment of arrearages will extend about two years beyond the maturity of the loan.

### Analysis

The relevant language of section 1322(b)(2) provides: "Subject to subsections (a) and (c) of this section, the plan may ... modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence...." The mortgagee in each of these cases would upon maturity of the loan be entitled under Ohio law to foreclose its mortgage and, unless the property were redeemed by the debtor, to have the property sold by the sheriff at foreclosure sale. This would, presumably, result in the mortgagee either receiving the proceeds of a third party bid or obtaining title to the property on its own bid. Under debtors' plans, however, the debtors would continue to own the properties and the mortgagees would be entitled after maturity only to receive the balance of their loans through installment payments under chapter 13 plans.

If availability of the foreclosure and sale remedy under Ohio law is deemed a "right" of the mortgagee, the substitution of the installment payments contemplated by debtors' plans would certainly appear to be a "modification," giving that term its ordinary meaning. Most courts that have considered this issue have concluded that foreclosure, or its equivalent, and sale are rights, and that plans of the sort proposed in these cases are modifications precluded by section 1322(b)(2). *Seidel v. Larson (In re Seidel)*, 752 F.2d 1382 (9th Cir.1985); *In re La Brada*, 132 B.R. 512 (Bankr. E.D.N.Y.1991); *In re Lumsden*, 112 B.R. 978 (Bankr.W.D.Mo.1990); *In re Sennhenn*, 80 B.R. 89 (Bankr.N.D.Ohio 1987); *In re Bosteder*, 59 B.R. 878 (Bankr. S.D.Ohio 1986). However, it has been suggested that there is no real modification of rights since the mortgagee will receive under the plan installment payments having a present value equal to the unpaid balance of the mortgage. *In re Williams*, 109 B.R. 36 (Bankr.E.D.N.Y.1989).

This perceived economic equivalence enables "cram down" as provided for in section 1325(a)(5)(B) of the Code to pass constitutional muster. But it strains common sense, as well as linguistic usage, to suggest that requiring the creditor to accept installment payments under a chapter 13 plan does not modify its rights. *See In re Groff*, 131 B.R. 703 (Bankr.E.D.Wis.1991).

Debtors also urge that section 1322 permits a debtor to cure defaults and that post maturity installment payments under a plan may be properly characterized as such a cure. Section 1322(b)(5) permits the debtor to cure defaults within a reasonable time, but in the context of maintaining payments on contracts extending beyond the plan. Therefore section 1322(b)(5) does not appear applicable to mortgages which have expired or which will expire during the plan. Section 1322(b)(3), however, permits the plan to "provide for the curing or waiving of any default." It is not entirely clear what sorts of cure this section contemplates. There is no contextual guide to the meaning of "cure" as used in section 1322(b)(3). The courts in *Williams* and in *In re Klein*, 106 B.R. 396 (Bankr.E.D.Pa.

1989), interpreted this general right to cure to allow the sort of post maturity installment payments the debtors would provide in these cases. *See also Grubbs v. Houston First American Sav. Ass'n (In re Grubbs)*, 730 F.2d 236 (5th Cir.1984).

From one perspective any remedy which contemplates full payment of a defaulted loan could be said to "cure" the default. But as argued in *Seidel* and other cases, the more natural meaning of "cure" encompasses only actions which would de-accelerate the loan or otherwise enable the debtor to resume performance under the revived agreement. It would not appear to describe an alternative remedy for a matured loan. Moreover, ascribing to "cure" in section 1322(b)(3) its ordinary meaning avoids conflict with section 1322(b)(2)'s prohibition against modifying the rights of residential mortgagees. This leaves the question of whether interpreting section 1322(b)(2) to prohibit debtors' plans appears so at odds with Congressional intent as reflected either in the legislative history or common sense that an expanded meaning of "cure" should be adopted despite its apparent conflict with section 1322(b)(2).

The legislative history is inconclusive. Debtors argue that the overriding intent of chapter 13 was to permit debtors to save their homes consistent with full payment to the mortgagee, and that this intent would be needlessly frustrated by preventing a debtor from, in effect, refinancing a mortgage balloon payment over the life of the plan. This is an appealing argument since it permits a debtor to save her home while subjecting the mortgagee only to the delay of a "cram down", not, in theory at least, to an economic loss. But the difficulty with this argument is that there is no evidence that Congress adopted it. After a lengthy and in-depth analysis the court in *In re Seidel* concluded that the legislative history suggested that Congress intended to protect home mortgagees from being subjected to installment payments of the kind proposed by these debtors. *Accord In re Sennhenn, supra; In re La Brada, supra*. If a debtor had the option of paying off her mortgage under the plan, with-

out regard to the terms of that mortgage, it does in fact appear that whatever protection had been intended in section 1322(b)(2) would be considerably weakened.

It is obviously disturbing that a debtor may be precluded from refinancing a balloon under her plan, even if she has a substantial equity and if a forced sale will result in her eviction from her home. This is particularly troublesome when junior or short-term mortgages are involved. However inconclusive the legislative history, it seems likely that Congress' attention was focused on standard long-term first mortgages rather than junior or short-term mortgages. *See In re Williams, supra.* But this is at best a supposition. There is no basis in the language of the statute or elsewhere to support such a distinction among residential mortgages. Therefore, the Court is constrained to join the majority of courts which have accorded the words "modification" and "cure" in section 1322 their ordinary meanings. *See United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); *United States v. Nordic Village, Inc.,* — U.S. ——, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992).