### In re Herbert WATSON, Debtor.

### Bankruptcy No. 95–12220DAS.

United States Bankruptcy Court,
E.D. Pennsylvania.

Dec. 20, 1995.

Michael D. Ward, Philadelphia, PA, for Debtor.

Frank L. Majczan, Jr., Majczan & Majczan, Allentown, PA, for Transamerica Consumer Discount Co.

Shawn Lau, Reading, PA, for Meridian Bank.

Edward Sparkman, Chapter 13 Trustee, Philadelphia, PA.

### OPINION

DAVID A. SCHOLL, Chief Judge.

### A. INTRODUCTION

The instant contested matter presents the issue of whether a Chapter 13 debtor may cure, in his Chapter 13 plan, a default in a nonresidential mortgage obligation which matured pre-petition. While recognizing that 11 U.S.C. § 1322(c)(2) is of no help to the Debtor, we also note that 11 U.S.C. § 1322(b)(2), which is the statutory basis of the contention that such a default cannot be cured, is inapplicable as well. We therefore adhere to our earlier decisions, prior to enactment of § 1322(c)(2), which hold that a cure of a debt which matured pre-petition is permissible under 11 U.S.C. § 1322(b)(3), *i.e.,* *In re Taras,* 136 B.R. 941, 951–52 & n. 5 (Bankr.E.D.Pa.1992); *In re Rowe,* 110 B.R. 712, 724 (Bankr.E.D.Pa.1990); *In re Klein,* 106 B.R. 396, 402–04 (Bankr.E.D.Pa.1989); and *In re Ford,* 84 B.R. 40, 42–44 (Bankr. E.D.Pa.1988).

## B. PROCEDURAL AND FACTUAL HISTORY

HERBERT WATSON ("the Debtor") filed an individual Chapter 13 bankruptcy case on March 24, 1995. On May 24, 1995, Meridian Bank ("the Bank"), one of two mortgagees on property owned by the Debtor at 6061–65 Old York Road, Philadelphia, Pennsylvania 19141 ("the Property"), from which the Debtor operates an auto body shop but in which he does not reside, filed a motion for relief from the automatic stay in order to permit it to foreclose on its mortgage. The Bank's mortgage was listed on the Debtor's Schedules in the amount of $11,164.00. The result of a contested hearing of June 20, 1995, on this motion was an Order of June 21, 1995, conditioning the stay on the Debtor's obtaining adequate insurance for the Premises by June 30, 1995, and maintaining the Debtor's proposed plan payments of $780 monthly to the Standing Chapter 13 Trustee, Edward Sparkman, Esquire ("the Trustee"), through confirmation, originally scheduled on October 3, 1995.

The confirmation hearing was initially continued until the first scheduled date of a hearing on a motion of the Trustee to dismiss the case due to the plan's infeasibility ("the TMTD"), on November 7, 1995. Thereafter the hearings on confirmation and the TMTD were continued until November 28, 1995, and, later, to January 9, 1996. The Debtor's plan, which has not been amended, contemplates payments of $780 for 60 months, total payments of $46,800.

On October 26, 1995, Transamerica Consumer Discount Company ("the Movant"), the assignee of another mortgage on the Premises, filed the instant motion seeking relief from the automatic stay in order for the Movant to proceed with foreclosure of its mortgage ("the Motion") against the Premises. The Motion was based, *inter alia,* on the Movant's contention that its mortgage against the Premises matured on October 20, 1992, leaving a balance in excess of $42,000 which, so the Movant alleged, could not be cured on a Chapter 13 plan. While not directly contesting the Movant's allegations that its mortgage had matured, the Debtor contended that his plan, apparently contemplating a payoff of the entire balance of the debts owed to the Bank and the Movant, the latter of whose debt was listed on the Schedules at $33,653, was confirmable. We note that, since the plan contemplates payments of $780 monthly for 60 months, or a total of $46,800, it would not be sufficient to pay a $42,000 claim to the Movant, plus an $11,164 claim to the Bank, plus deferred interest and the Trustee's commissions. The Debtor has averred that the Movant's secured proof of claim is filed only in the amount of $38,289.79, and we note that he has objected to that claim. A hearing is scheduled on that objection on January 16, 1996. He also objected to the Bank's claim, and the hearing on that objection is scheduled on January 30, 1996. In our attached Order, we indicate that these hearings shall not be continued.

A brief hearing of December 5, 1995, on the Motion featured testimony of Michelle Rist, the Movant's representative, which established only that the mortgage debt had indeed matured pre-petition. The parties' counsel agreed that the only issue presented was whether the Debtor's obligation to the Movant could be cured in a payoff plan. We accorded the parties until December 19, 1995, to submit briefs arguing their respective legal positions on the Motion.

## C. DISCUSSION

The Movant argues that an attempt to pay off an obligation which matured pre-petition is a "modification" of its rights against the Debtor rather than a "cure," which is prohibited under the holding of *In re Seidel,* 752 F.2d 1382 (9th Cir.1985). *Seidel* does so hold. However, the basis of that holding is 11 U.S.C. § 1322(b)(2). The pertinent provisions of § 1322(b), including § 1322(b)(2), are as follows:

(b) Subject to subsections (a) and (c) of this section, the plan may—

.  .  .  .  .

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave

unaffected the rights of holders of any class of claims;

(3) provide for the curing or waiving of any default;

.     .     .     .     .

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due; ...

As a careful reading of § 1322(b)(2) reveals, the preclusion on "modification" of the rights of secured creditors arises only in the case of a claim "secured only by a security interest in real property that is the debtor's principal residence, ..." The Premises in issue is not the Debtor's residence, but is, instead, his place of business. Therefore, it seems clear that § 1322(b)(2) is inapplicable to the Movant's claim.

■ Even if the Premises were the Debtor's residence, the mortgage includes a security interest on "all heating, lighting, plumbing, gas, electric, ventilating, refrigerating and air-conditioning equipment" utilized at the Premises, providing that said items shall be "deemed fixtures." Under the holdings of *In re Johns,* 37 F.3d 1021, 1023–24 (3d Cir. 1994); *In re Hammond,* 27 F.3d 52, 55–57 (3d Cir.1994); *Sapos v. Provident Institution of Savings in Town of Boston,* 967 F.2d 918, 922, 925–26 (3d Cir.1992); and *In re Bernhardt,* 186 B.R. 889 (Bankr.E.D.Pa.1995), it is clear that a security interest extending to such personalty is not within the scope of § 1322(b)(2), even if the Premises were a residence.

The only subsection of § 1322(b) which appears at all applicable to the relationship between the Debtor and the Movant is § 1322(b)(3), which permits "curing or waiving of *any* default" in a plan (emphasis added). The fact that § 1322(b)(3) references "*any* default" appears to contradict the notion that § 1322(b)(3) does not include defaults which have matured pre-petition.

Assuming further *arguendo* that somehow § 1322(b)(2) were applicable, a split of authority developed over the issue of whether an attempt to cure a default which has matured pre-petition is a "modification" precluded by the terms of § 1322(b)(2), or a "cure" authorized by § 1322(b)(3). Cases following *Seidel* in holding that such a cure is prohibited include *Estate of Pasteur v. Burton,* 172 B.R. 533, 535 (M.D.N.C.1993), *aff'd,* 35 F.3d 555 (4th Cir.1994); *In re Halley,* 70 B.R. 283, 285 (E.D.Pa.1987); *In re Fuentes,* 167 B.R. 901, 902 (Bankr.E.D.Mo.1994); *In re Manocchia,* 157 B.R. 45, 45–46 (Bankr.D.R.I. 1993); *In re Baxter,* 155 B.R. 285, 288 (Bankr.D.Mass.1993); *In re Gianguzzi,* 145 B.R. 792, 793–94 (Bankr.S.D.N.Y.1992); *In re Amerson,* 143 B.R. 413, 418–19 (Bankr. S.D.Miss.1992); *In re La Brada,* 132 B.R. 512, 515–16 (Bankr.E.D.N.Y.1991); *In re Witomski,* 126 B.R. 205, 207 (Bankr.D.Md.1990); *In re Cooper,* 98 B.R. 294, 299 (Bankr. W.D.Mich.1989); and *In re Davis,* 91 B.R. 477, 480–81 (Bankr.N.D.Ill.1988).

On the other hand, the interpretation of § 1322(b) premised by *Seidel* has been rejected by about an equal number of courts. The most influential case, holding that "subsections (b)(2) and (b)(5) of § 1322, did not, with regard to home mortgages, affect the general provision of Chapter 13, ... that permitted a petitioner's plan to pay ... over the terms of the plan any matured obligations, whether secured or unsecured; ..." and that a matured debt is "curable under § 1322(b)(3), rather than (5)," is *Grubbs v. Houston First American Savings Ass'n,* 730 F.2d 236, 246, 247 (5th Cir.1984) (10–4 en banc decision). Cases following the reasoning of *Grubbs* and rejecting that of *Seidel* include *In re Hart,* 184 B.R. 849, 852–57 (Bankr.M.D.Fla.1995); *In re Eason,* 181 B.R. 127, 131–34 (Bankr.N.D.Ala.1995); *In re East,* 172 B.R. 861, 865–67 (Bankr.S.D.Tex. 1994); *In re Dixon,* 151 B.R. 388, 390–94 (Bankr.S.D.Miss.1993); *In re Smith,* 125 B.R. 240, 241–42 (Bankr.W.D.Mo.1991); *In re Williams,* 109 B.R. 36, 40–42 (Bankr. E.D.N.Y.1989); *In re Bolden,* 101 B.R. 582, 583–84 (Bankr.E.D.Mo.1989); *In re Dochniak,* 96 B.R. 100, 101–02 (Bankr.W.D.Ky. 1988); *In re McSorley,* 24 B.R. 795, 797–98 (Bankr.D.N.J.1982); and *In re Simpkins,* 16 B.R. 956, 960–68 (Bankr.E.D.Tenn.1982).

It should also be noted that two other Circuits have, similar to *Grubbs*, limited the scope of "modifications" prohibited by § 1322(b)(2). *See In re Clark*, 738 F.2d 869, 874 (7th Cir.1984); and *In re Taddeo*, 685 F.2d 24, 28 (2d Cir.1982). As *Seidel* accurately points out, however, these decisions address only a situation where the secured creditor has *accelerated* a debt pre-petition, not a situation where a debt has *matured* pre-petition. 752 F.2d at 1386. Although the *Seidel* court and the Movant, in its brief, attempt to limit the *Grubbs* holding in the same way, at *id.*, the *Grubbs* language quoted at pages 34–35 *supra*, obviously expresses an intention to render a broader holding.

It should also be noted that, in several districts, notably the Eastern Districts of New York and Missouri and the Southern District of Mississippi, different judges of the same court have ruled differently. This court has declined to follow the very brief statement of the *Halley* district court in this district on this issue. *See In re Morningstar Enterprises. Inc.*, 128 B.R. 102, 106 & n. 1 (Bankr.E.D.Pa.1991) (decision of a single district judge in a multi-judge district court, such as this court, is not binding on the bankruptcy court). *Cf. In re Stafford*, 123 B.R. 415, 418 (N.D.Ala.1991) (district court refuses to follow a decision of another district judge on a similar issue).

This court first addressed the issue of when a debtor could cure or modify a material indebtedness in a plan in *Ford, supra*. The matter at issue was an objection to confirmation filed by a second mortgagee on the debtor's residence, whose mortgaged debt matured about two and a half years after the debtor's filing, during the duration of the plan. Although we were "not convinced" that a security interest which, despite delineations on the form, still included rents, plumbing, and heating on the premises, was within the scope of § 1322(b)(2), 84 B.R. at 42, we nevertheless addressed the issue of whether the loan obligation was subject to cure. We held, basically, that certain passages in the decision in *In re Roach*, 824 F.2d 1370, 1374–77 (3d Cir.1987), indicated approval of the decisions in *Grubbs* and *Tad-*

deo. Therefore, we concluded that, under the law of this Circuit, "the Debtor's efforts to cure his rather modest post-petition defaults are within ... the broad scope of plan provisions expressly authorized by § 1322(b)(3)." 84 B.R. at 44.

In *Klein, supra*, we were faced with a matter involving the same lender and the same relevant facts as in *Ford*. 106 B.R. at 397–99. Although we emphasized the fact that the creditor's security interest in rents, plumbing, and heating took the obligation out of the scope of § 1322(b)(2), *id.* at 399–401, we also reiterated *Ford's* holding that § 1322(b)(3) authorized the debtors' cure of an obligation which matured prior to the completion of the debtors' plan payments. *Id.* at 402–04.

In *Rowe, supra*, we were faced with facts quite different from those of *Ford* and *Klein*. The debtor was the vendee of her home under an installment land sale contract on which the last payment was due in January 1984, about five years prior to her Chapter 13 filing. 110 B.R. at 714. The debtor's plan to complete the purchase of her home under the contract was deemed permissible in the following passage, *id.* at 724:

we believe that an obligation which matures before a bankruptcy filing may be cured in a Chapter 13 plan. *See In re Klein*, 106 B.R. 396, 402–04 (Bankr. E.D.Pa.1989); and *In re Ford*, 84 B.R. 40, 43–44 (Bankr.E.D.Pa.1988). While we have readily acknowledged authority to the contrary, including *In re Halley*, 70 B.R. 283, 285 (E.D.Pa.1987), we have also observed that the subsequent analysis imparted in *In re Roach*, 824 F.2d 1370, 1374–77 (3d Cir.1987), clearly holding that a "cure" is not a "modification" of a secured obligation, suggests that 11 U.S.C. § 1322(b)(2) is not a bar to confirmation of a plan featuring a cure of an obligation which matured prior to a bankruptcy filing. As the Defendant notes, 11 U.S.C. § 1322(b)(5), relating to obligations which mature after the plan payments are completed, is clearly inapplicable. We cannot agree, however, with the Defendant's offhand and unsupported statement that 11 U.S.C. § 1322(b)(3) is inapplicable. That

Code section provides for the curing of *any* default. *See Klein, supra,* 106 B.R. at 404; and *Ford, supra,* 84 B.R. at 43–44. It would seem to embrace a default which matured pre-petition as well as any other.

The decisions in *Ford, Klein,* and *Rowe,* all preceded the decision in *First Nat'l Fidelity Corp. v. Perry,* 945 F.2d 61 (3d Cir.1991). In that decision, the Court of Appeals extended its decision in *Roach* and held that, where applicable state law did not permit a post-judgment cure of a mortgage obligation, a debtor was precluded by the terms of § 1322(b)(2) from paying off that obligation in a plan. *Id.* at 65–67. To some, this may have seemed a rejection of the *Grubbs* holding that § 1322(b)(3) could be utilized to cure even an accelerated mortgage obligation.

However, this court addressed the impact of *Perry* on an attempt of a Pennsylvania debtor to pay off the secured portion of a mortgage obligation bifurcated into secured and unsecured portions under 11 U.S.C. § 506(a) in *Taras, supra,* 136 B.R. at 950–52. We refused to conclude that *Perry* precluded the payoff of the secured portion of the mortgagee's claim in the debtor's plan in that case on several grounds. These included holdings that the mortgagee's security interest in rents, etc., took the obligation outside of § 1322(b)(2), 136 B.R. at 951, and that such a pay off was not a "modification" under Pennsylvania law. *Id.* at 952. However, we also noted that *Perry* made no reference to § 1322(b)(3), apparently leaving intact the holdings in *Roach, Rowe, Klein,* and *Ford* that § 1322(b)(3), as opposed to § 1322(b)(2), could still be utilized as an independent basis on which to justify a cure otherwise prohibited by § 1322(b)(2). *Id.* at 952 n. 5.

The next development was the enactment of 11 U.S.C. § 1322(c) in the Bankruptcy Reform Act of 1994 ("the BRA"), effective October 22, 1994, as to cases, such as the instant case, filed thereafter. That new Code section provides as follows:

(c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law—

(1) a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law; and

(2) in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title.

"The legislative history of [this] provision states that it was intended to overrule the decision [in *Perry, supra*]." 5 COLLIER ON BANKRUPTCY, ¶ 1322.14B, at 1322–51 (15th ed. 1995). *See* BRA, Section-by-Section Description, § 301, H.R.REP. NO. 103–834, 103rd Cong., 2d Sess. 33–34 (October 4, 1994), U.S.Code Cong. & Admin.News 1994, at 3323, 3341–3342. ("[T]he changes made by this section, in combination with those made in section 305 of this bill [relating to interest on arrears], would ... also overrule the result in [*Perry*] with respect to mortgages on which the last payment on the original payment schedule is due before the date on which the final payment under the plan is due."). *See In re Chang,* 185 B.R. 50, 53 (Bankr.N.D.Ill.1995) (court refuses to follow its prior holding in *Davis, supra,* in light of § 1322(c)(2)); and *In re Escue,* 184 B.R. 287, 292–93 (Bankr.M.D.Tenn.1995). Therefore, to the extent that *Perry* interpreted § 1322(b)(2) as limiting a Chapter 13 debtor's right to cure a mortgage after a foreclosure judgment or because it had determined that the obligation matured pre-petition, it was overruled by § 1322(c).

*Seidel* is, of course, more on the point of whether an obligation which matured pre-petition can be cured than is *Perry.* It appears that § 1322(c)(1) overruled *Perry,* while § 1322(c)(2) overruled *Seidel.* In any event, as the court expressly holds in *In re Jones,* 188 B.R. 281, 284 (Bankr.D.Or.199), there is little doubt that § 1322(c)(2) overruled *Seidel.*

The subsection of § 1322(c) which is important to the resolution of the instant matter is of course § 1322(c)(2). While it is true

that § 1322(c)(2) is only applicable to "a claim secured only by a security interest in real property that is the debtor's principal residence," it is also true that § 1322(b)(2) is similarly limited. Thus, the obvious purpose of § 1322(c)(2) was to serve as the antidote for the theory that § 1322(b)(2) barred the cure of a residential mortgage obligation which matured pre-petition. Since § 1322(b)(2) was perceived as the only possible source of such a limitation on the right to cure, § 1322(c)(2) was confined on its scope to obligations within the scope of § 1322(b)(2). However, as to obligations not within the scope of § 1322(b)(2), such an antidote was unnecessary. Section 1322(b)(3) already provided a right to cure "any default," which would certainly appear to include a default in an obligation which matured pre-petition. Therefore, the enactment of § 1322(c)(2), except insofar as it expresses a Congressional attempt to overrule *Perry* and *Seidel,* is not directly relevant to the issue at bar.

Nevertheless, we believe that our results in *Ford, Klein, Rowe,* and *Taras* are unmistakably reinforced by the presence of § 1322(c)(2). Congress intended to allow debtors to cure obligations which matured pre-petition, and expressly so stated in the case of obligations regarding which the *Seidel* line of cases denied debtors this right. We are therefore unshaken in our conclusion that § 1322(b)(3) permits the cure, in a Chapter 13 plan, of a nonresidential mortgage obligation, such as the obligation in issue, which has matured pre-petition.

As a result of this conclusion, in light of the fact that the Movant relied solely upon its contention that the instant obligation could not be cured in pressing the Motion, the Motion must be denied. We are, however, concerned about the obvious underfunding of the Debtor's plan, *see* page 33 *supra,* which will preclude its confirmation in its present form on January 9, 1996. The Debtor has addressed this issue by objecting to the claims of the Movant and the Bank. We have directed that the hearings on these objections be conducted on a must-be-tried bases, and we will continue the confirmation hearing until January 30, 1996. In our Or-der we also provide that, unless the Debtor succeeds in obtaining confirmation of a plan with not more than one continuance after resolution of the objections on January 30, 1996, the TMTD will be granted.

## D. CONCLUSION

An Order consistent with the conclusions set forth in this Opinion will be entered.

### ORDER

AND NOW, this 20th day of December, 1995, after a brief hearing on the Motion of Transamerica Consumer Discount Co. ("the Movant") for relief from the automatic stay ("the Motion") on December 5, 1995, upon consideration of the parties' briefs and review of the history of this case, it is hereby ORDERED AND DECREED as follows:

1. The Motion is DENIED.

2. The Debtor shall resolve the outstanding impediments to confirmation, either through the objections to claims already filed, and/or filing an amended plan, or by some other means before the next listing, or this case may be dismissed.

3. The list of the Debtor's objection to the Movant's claim on January 16, 1996, shall not be continued.

4. A final hearing on confirmation, the Trustee's Motion to Dismiss, and the Debtor's objection to the Bank's claim, and on any other objection to a claim filed, shall be held on

TUESDAY, JANUARY 30, 1996, at 9:30 A.M. and shall be held in Bankruptcy Courtroom No. 4 (Room 3620), Third Floor, United States Court House, 601 Market Street, Philadelphia, PA 19106.

5. No continuances shall be granted in the hearings on the objections to the Bank's claim on January 30, 1996. If a plan cannot be confirmed on January 30, 1996, this case may be dismissed. Not more than one additional continuance of the confirmation hearing after the January 30, 1996, date will be permitted.